ADAMS and others *v.* BRIDGEWATER IRON Co. and others.    (No.
1,430.)[1]

AMERICAN TUBE WORKS *v.* SAME.    (No. 1,428.)

*(Circuit Court, D. Massachusetts.  February 3, 1886.)*

1. PATENTS FOR INVENTIONS—SUIT IN EQUITY ON EXPIRED PATENT.
   A bill was filed to recover damages for infringement during the original
   term of a patent, which term had then expired, and equitable jurisdiction was
   sought to be maintained on the ground of the intricacy of the account.  *Held,*
   following *Lord* v. *Whitehead,* 24 Fed. Rep. 801, that, in actions of tort, the
   mere intricacy of the account does not furnish a ground for equitable inter-
   ference, and that the bill must be dismissed.

2. SAME—BILL FILED TWENTY-THREE DAYS BEFORE PATENT EXPIRED.
   A bill was filed July 10th on a patent which expired August 2d following.
   A perpetual, but not a provisional, injunction was prayed.  *Held,* that the fact
   that no preliminary injunction was asked for was not material, as complain-
   ants had a right at any moment to amend their bill and pray for a provisional
   injunction.

3. SAME—EQUITY JURISDICTION.
   This case was cognizable in equity at the time the bill was filed, and it was
   not impossible to have obtained equitable relief during the life of the patent.
   It was not a mere device to transfer a plain jurisdiction at law to a court of
   equity, as where the patent has only several days to run.

4. SAME—ESTOPPEL—ACTS OF PATENTEE AFTER ASSIGNMENT.
   By contract in writing made between patentee and defendants it was agreed
   defendants did not infringe the patent; but prior to the date of said contract
   the patentee had granted to complainants an exclusive license for the original
   term of the patent, and agreed to assign to them the extended term, which he
   did subsequent to the making of the contract.  *Held,* that at the date of the
   contract complainants had vested in them the entire right to the patent for
   the extended term, and that right could not be disturbed by any act of the
   patentee.

5. SAME—FREEBORN ADAMS PATENT, No. 24,915, AUGUST 2, 1859, CONSTRUED.
   The patent claimed, as a new article of manufacture, a tube or cylinder cast
   out of copper, and free from blow-holes and other similar defects, when pro-
   duced as therein stated.  *Held,* that the claim was limited to a particular prod-
   uct, when produced in a particular way.

6. SAME—NOVELTY.
   This patent described apparatus whereby the stream of molten copper was
   deposited in the annular space of a cylindrical rotating mould, so as to fall in
   subdivided portions all around, intermittently, in such manner as to allow the
   gases to escape and thus avoid blow-holes.   In the prior patents the centrifu-
   gal force of rotation, and not patentee's method of distribution, was relied on
   to make a more perfect cylinder.  *Held,* that the Adams patent possessed pat-
   entable novelty over what was shown of the prior art.

7. SAME—WORDS "FREE" AND "PERFECT" CONSTRUED.
   The specification of the patent contained the words "a perfect cast copper
   cylinder," and the claim, the words "free from blow-holes and other similar
   defects."  *Held,* that the claim must be construed to mean a cast copper cylin-
   der so free from blow-holes as to be considered sound,—sufficiently perfect to
   be used in the arts for the purposes for which copper cylinders are used,—and
   such standard of perfection is sufficiently definite.

8. SAME—EQUIVALENTS—INFRINGEMENT.
   In the casting of copper cylinders a basin, rotating on top of a stationary
   mould, is the equivalent of a rotating mould, as the molten metal is distrib-
   uted in the mould in the same manner substantially by each of the devices.

[1] Reported by Charles C. Linthicum, Esq., of the Chicago bar.

In Equity.

*Geo. L. Roberts* and *Geo. Wm. Estabrook,* for complainants.

. *D. Hall Rice,* for defendants.

COLT, J.    These bills in equity are brought for infringement of letters patent No. 24,915, granted to Freeborn Adams, August 2, 1859, for improvement in casting copper cylinders. One suit is brought for infringement during the original term of the patent, and the other suit for infringement during the extended term.

At the outset it is necessary to consider certain special defenses to these suits. The original term of the patent expired August 2, 1873, and it is urged that this court has no jurisdiction of the suit covering the original term. We think this objection well taken. A bill in equity for a naked account of profits and damages against an infringer of a patent cannot be sustained. *Root* v. *Railway,* 105 U. S. 189. The plaintiffs seek to invoke equitable jurisdiction on the ground of the intricacy of the account, and that, consequently, their remedy at law would be inadequate and incomplete. We have recently held, in the case of *Lord* v. *Whitehead & Atherton Mach. Co.,* 24 Fed. Rep. 801, that in actions of tort the mere intricacy of the account does not furnish a ground for equitable interference. *Hipp* v. *Babin,* 19 How. 271; *Root* v. *Railway Co., supra; Parrott* v. *Palmer,* 3 Mylne & K. 632, 642; *Higginbotham* v. *Hawkins,* 7 Ch. App. 676; *Smith* v. *London & S. W. Ry. Co.,* Kay, 408. The suit brought for infringement during the original term of the patent must be dismissed.

To the second suit, covering the extended term, the defendants urge the same objection of want of jurisdiction. Suit was begun July 10, 1880, and the extended term of the patent expired August 2, 1880. The bill prays for a perpetual, but not for a provisional, injunction. The fact that no preliminary injunction was asked for we do not deem material. The bill prays for a perpetual injunction, and the plaintiffs had a right, at any moment, to amend their bill and ask for a provisional one. The case was cognizable in equity at the time the bill was filed, and it was not impossible to have obtained equitable relief during the life of the patent. It was not a mere device to transfer a plain jurisdiction at law to a court of equity, as the courts have held where the patent has only several days to run. *Dick* v. *Struthers,* 25 Fed. Rep. 103; *Toledo Mower & Reaper Co.* v. *Johnston Harvester Co.,* 24 Fed. Rep. 739; *Mershon* v. *Pease Furnace Co.,* 24 Fed. Rep. 741; *Gottfried* v. *Moerlein,* 14 Fed. Rep. 170; *Betts* v. *Gallais,* L. R. 10 Eq. 392; *Burdell* v. *Comstock,* 15 Fed. Rep. 395; *Davis* v. *Smith,* 19 Fed. Rep. 823.

Another special defense set up is a contract dated June 16, 1873, between the defendant company and Adams, the patentee, whereby it was agreed, among other things, that the making of copper tubes and cylinders, as practiced by the Bridgewater Iron Company, was not an infringement of the Adams patent. Whatever force, if any, this contract may have as between Adams and the defendant com-

pany, we do not see, under the circumstances, how it can affect the rights of the complainants. On March 27, 1862, Adams gave an exclusive license covering the original term of the patent to the complainants. On December 8, 1869, he agreed to assign the extended term to the complainants, which was subsequently done September 1, 1873. The subsequent assignment was but the fulfillment of the prior contract of December 8, 1869, and did not alter the rights of the parties. The fact that the extension had not been granted at the time the contract was made does not affect the case, for the assignment of an extension before the same is granted vests the extension in the assignee. It follows that at the date when Adams made his contract with the defendant company the complainants had vested in them the entire right to this patent for the extended term, and that right Adams could not disturb by any act of his. *Railroad Co.* v. *Trimble,* 10 Wall. 367; *Nicolson Pavement Co.* v. *Jenkins,* 14 Wall. 452; *Hendrie* v. *Sayles,* 98 U. S. 546.

This brings us to the consideration of the Adams patent and the question of infringement. The patent relates to an improvement in casting copper cylinders. The specification says: "Great difficulty is experienced by workers in copper in making castings of this metal, such castings being liable to be filled with imperfections and blowholes, and the efforts heretofore made to remedy this evil have not been attended with success." The patent describes a vertical cylindrical mould provided with a cylindrical core, concentrically placed so as to form an annular mould cavity which is open and substantially unobstructed at the top, and rotating concentrically upon a vertical axis. By this means the stream of metal flowing downward at a given point above the annular mould cavity enters the latter continuously, as it is revolved, at any point of its open annular area, as the same is by the rotation of the mould successively brought under the given point of the falling stream. The patent says:

"I am aware that rotating moulds have been used; I make no claim whatever to them. But what I do claim (as a new article of manufacture) is a tube or cylinder, cast out of copper, and free from blow-holes and other similar defects, when produced as herein stated."

The scope of the patent, as claimed by the patentee, seems to be clear. It is for a new article of manufacture in the form of a cast copper tube or cylinder, free from blow-holes and other similar defects, when produced as described. Adams has limited himself in his claim to a particular product, when produced in a particular way. To become an infringer, therefore, it is necessary, not only that the article described should be produced, but also that there should be employed substantially the same means to accomplish the result.

The defenses to the patent are two: want of novelty in view of the prior state of the art, and non-infringement. Adams discovered a new method of distributing the metal by which a large percentage of good copper tubes can be obtained. He made a great advance in the

art of casting copper. We have carefully examined the various prior patents introduced by the defendants as anticipations of Adams, and we nowhere find the method of distribution employed by him. Rotating moulds were old, and Adams expressly disclaims any claim to them; but the apparatus described in the Adams patent, whereby the stream of molten copper is deposited in the annular space of a cylindrical mould so as to fall in subdivided portions all around, intermittently, in such manner as to allow the gases to escape and thus avoid blow-holes, is seen in no prior patent. In the prior patents of the Eckhardt type (an English patent granted in 1809) it is the centrifugal force of rotation, and not the Adams method of distribution, which is relied upon to make a more perfect cylinder. Eckhardt says: "The centrifugal force of the rotation causes the fluid to press against the interior surface, and renders the cast more perfect and neat." The defendants urge that Fig. 1 of the Eckhart patent shows an apparatus like that of Adams, except as to the perforated core-bar, but we do not think this is proved. We do not find in the Eckhardt patent either the mode of operation or the apparatus of Adams. So in the Needham patent for casting car-wheels, of December 22, 1879, there is employed centrifugal force generated by rotation, and not the distribution of Adams. The same may be said of the French patent of Grand, dated June 2, 1854. The French patent to Estinant bears little or no resemblance to the Adams method. We deem it unnecessary to refer to other patents introduced by defendants. Our conclusion is that the defendants have failed to make out want of novelty in the Adams invention, based upon the prior state of the art.

The question of infringement remains to be considered. The defendants contend that they have never made or sold the article of manufacture covered by the Adams patent. The patent, they say, is for a cast copper cylinder free from blow-holes, while all their cylinders contain blow-holes. The specification contains the words "a perfect cast copper cylinder," but this language must be taken in connection with the claim, which says, "free from blow-holes and other similar defects." It is blow-holes which are defects, or which render the copper tubes unmerchantable, which are here fairly intended. It would be a narrow construction to put upon the Adams patent to hold that it only covered a cast copper cylinder absolutely free from blow-holes. Probably no such cylinders were ever made by any process. It is a practical question. The claim must be construed to mean a cast copper cylinder so free from blow-holes as to be considered sound; that is, sufficiently perfect to be used in the arts for the purposes for which copper cylinders are used. The defendants object to any such standard of perfection on the ground that it is variable, but we deem it sufficiently definite. If it should be found that the defendants use the Adams process, they should not be allowed to shield themselves from the charge of infringement on the

ground that the cylinders they produce, though merchantable and sound, practically speaking, are not absolutely free from blow-holes.

The defendants deny the use in the casting of copper cylinders of the process shown in the Adams patent. In the Adams device the mould rotates, while the defendants rotate a basin on top of the mould. But the rotation of the basin on the top of the mould distributes the metal in the mould in the same manner, substantially, as is done by rotating the mould. What Adams accomplishes by the rotation of the mould the defendants accomplish by the rotation of the basin on top of the mould. We are aware that the defendants deny this. Their position is that the rotating basin causes a different distribution from the method of Adams; that so far from distribution being caused by the rotation of the basin, there is less distribution when the basin rotates than when it is stationary. They further contend that the purpose for which a rotating basin is used, is to prevent the iron of the basin from melting off and injuring the casting as the molten copper is being poured. In spite of this contention on the part of the defendants we think the complainants have shown, by careful experiments, that by rotating the basin the metal is distributed in substantially the same way as by rotating the mould in the manner described by Adams, and that, therefore, the defendants use the Adams process.

Again, the argument is pressed by the defendants that the good results they experience in casting copper tubes are due to the use of flux in the molten metal, which they say acts chemically; to better sand for cores; or to whitening for covering the cores. We may admit all these things to be improvements, and yet there is infringement, if they use, in connection with these things, the method of distribution first pointed out by Adams. We know that the defendants undertake to prove that the results are equally good whether the basin rotates or is stationary; and that if they use a stationary plumbago basin, which will not melt like iron, they produce a casting as free from blow-holes as when the basin is rotated. We cannot but doubt this, because the complainants prove that by the Adams method of distributing the metal caused by rotation a very large percentage of sound copper tubes were produced, when previously, by the *great* weight of testimony, the percentage was small; and because it is further shown that by rotating the basin the defendants do substantially the same thing.

In our opinion, the complainants have made out a case of infringement, and a decree should be entered in their favor in the bill, covering the extended term of the Adams patent. The bill brought upon the original term of the patent must, for the reasons before given, be dismissed.

No. 1,430, bill dismissed; No. 1,428, decree for complainants.