## SAYRE v. SCOTT.

### (Circuit Court of Appeals, Third Circuit. May 23, 1893.)

1. PATENTS FOR INVENTIONS—INFRINGEMENT—FRUIT PARERS.

In letters patent No. 232,371, granted September 21, 1880, to Robert P. Scott, for an improvement in fruit parers, the first claim was for "the rotating dish-shaped knife, H, having a continuous cutting edge, in combination with mechanism for operating the same." *Held*, that "a continuous cutting edge" herein means an edge continuous in action, or which continuously cuts; and hence a device, otherwise an infringement, is not saved from infringement by the fact that its cutting edge has in it a nick or notch.

2. SAME—VALIDITY—PRIOR STATE OF ART.

This patent, which covers a device wherein the plane of the cutting edge of the knife is perpendicular to the spherical surface of the fruit to be pared, and which in consequence completely and satisfactorily pares the fruit in all parts, and of whatever shape, is not anticipated by patent No. 114,867, issued May 16, 1871, to the same party, for a device in which the knife was a disk, with the plane of its cutting edge tangent to the surface of the fruit, which was imperfect in its operation, and the result accomplished.

Appeal from the Circuit Court of the United States for the District of New Jersey.

In Equity. Suit by Robert P. Scott against Louis A. Sayre for the alleged infringement of complainant's patent. There was a decree for complainant, and defendant appeals. Affirmed.

A. Q. Keasbey and J. C. Clayton, for appellant.
Wm. G. Henderson, for appellee.

Before ACHESON, Circuit Judge, and BUTLER and WALES, District Judges.

ACHESON, Circuit Judge. This was a suit in equity brought by Robert P. Scott against Louis A. Sayre, the appellant here, for the infringement of letters patent No. 232,371, dated September 21, 1880, granted to the plaintiff upon an application filed December 2, 1878, for an improvement in fruit-paring machines. In his specification the inventor states:

"The object of my invention is to produce a rotary-knife fruit parer, more practical for general use, and more easily made, than that described in my former patent, of May 16, 1871,—No. 114.867."

The specification then further states:

"The invention consists in a new form of knife, being dished or cone-shaped; the manner of transmitting motion to the knife from the driving wheel; the position of the knife against the fruit; a new arrangement of the fork, being a new form for the tines, and manner of holding them together on a spindle, with which they revolve; the manner of connecting the frame of the machine to the standard which supports the same. Finally, it consists in the general arrangement of the gearing, in manner of transmitting motion to all the parts from the driving wheel, particularly those parts required in addition to other paring machines, on account of my giving a new movement to the knife, not used in other parers previous to mine, the present plan differing entirely from that in my former machine. * * * The revolving knife, H, is of a form, and operated in a manner, claimed as new. It has the shape of an inverted frustrum of a cone, and is fast to, and revolves with, the shaft, w. This form gives the proper slant to the knife towards the fruit without the small bevel gears, as required in my former patent. It also presents several other advantages in the practical working of the machine. In the old device, uneven fruit would not come in contact with the knife at the center or highest point, in which case it did not work satisfactorily."

The patent has two claims, namely:

"(1) The rotating, dish-shaped knife, H, having a continuous cutting edge, in combination with mechanism for operating the same, and the revolving fork, O, substantially as and for the purpose described.

"(2) The combination, in a paring machine, of a knife, H, fork, O, pinion, D, driving wheel, B, idle wheel, E, pinion, F, spur wheel, G, knife pinion, v, table pinion, n, table wheel, C, frame, A, support, I, and latch, z, the whole being applied together so as to operate in the manner described."

Upon the branch of this case involving the right of the plaintiff to maintain his bill, the defenses here urged are noninfringement, and the invalidity of the patent, for lack of patentable novelty. The issue raised by the first of these defenses is the one chiefly discussed and insisted on in the appellant's brief, and to it we will now address ourselves.

The dish-shaped knife in the defendant's parer is made with a slight nick or slit in the cutting edge, which his expert describes as "a notch which forms a right-angled corner at a certain point in the periphery of the cutter." The defendant's machines were manufactured under two patents granted to Herbert Cottrell,—

the first dated September 11, 1883, on an application filed July 28, 1883, the other dated April 27, 1886, on an application filed September 21, 1885. The earlier of these patents, in the specification, states:

"The invention consists in the combination, with a cylindrical or circular cutter head, of an annular cutter, having an opening across the circumference to allow of its being sprung onto the head, and to contract and hold itself thereon by its elasticity."

This description indicates the character of the small notch in the cutting edge of the defendant's fruit parers, upon which he bases his defense of noninfringement. The function there mentioned is the only one ascribed to the opening by that patent. The specification of Cottrell's later patent, however, states that the two ends of the circular strip are kept sufficiently apart on the cutter head to enable the sharp angle of one end to come in contact with the fruit as the cutter revolves, thus avoiding the tendency to scrape the skin without cutting. We are not at all convinced by the proofs that any advantage is thus secured; but, if it be an improvement, these subsequent patents afford no ground of defense, as against the plaintiff in this bill. Cantrell v. Wallick, 117 U. S. 689, 6 Sup. Ct. Rep. 970.

It is, however, strenuously insisted that by the claims of his patent the plaintiff is limited to a rotary, dish-shaped knife, with a cutting edge free from any nick or notch whatsoever therein. Is this the true construction of the patent? What do the words, "the rotary, dish-shaped knife, H, having a continuous cutting edge," fairly import? This language is to be read with reference to the purpose to be accomplished. The phrase, a "continuous cutting edge," applied to a fruit parer, means, we think, a cutting edge continuous in action,—an edge which continuously cuts. This is the reasonable construction, regard being had to the particular art. It is also the natural meaning of the words employed. Nor do we find anything in the contents of the file wrapper, or in the references therein contained, which requires us to impose upon the unambiguous terms of the claims a narrow and forced construction which practically would defeat the patent. Indeed, the closing correspondence between the office and the applicant indicates that it was the understanding of both that the word "continuous" covered a cutting edge, whether plain or serrated. But the patentee is not seeking, constructively, to expand his claims. He is resisting a very narrow interpretation of them, which would render his patent valueless. Now, under the proofs, it is perfectly clear that the defendant's cutting edge is continuous in action. Its substantial continuity remains, notwithstanding the nick or cut. When the machine is in operation the nick is imperceptible, and it is immaterial to the required work. For every practical purpose the defendant's rotating, dish-shaped knife has a "continuous cutting edge." The plaintiff's cutting edge and the defendant's cutting edge perform the same function, in substantially the same way, and accomplish the same result. Therefore,

in the sense of the patent law, they are the same thing. Machine Co. v. Murphy, 97 U. S. 120. This record, in our judgment, shows clear infringement by the appellant.

In considering the question of patentable novelty we naturally turn, in the first instance, to the earlier Scott patent, of 1871. Upon it the defense lays special stress. Now, the fruit-paring machine therein described undoubtedly has features found in the machine made in accordance with the patent in suit. In particular, it has a rotary knife. But that knife is a flat disk, and the highest point is the only proper cutting part. Consequently, that machine worked satisfactorily only when the fruit came against the highest point of the knife, and the paring was imperfect when it came against the one or other side of the knife at a lower point. This change in position was constantly occurring. It is true that peaches could be pared by the machine of 1871, when worked by a skillful hand, if the fruit was regular in shape, and of uniform size. But for common and practical use the machine was a complete failure. Now, a practical machine for paring peaches was much desired and sought after, yet the remedy for the serious defects of the 1871 parer, for a long time, was undiscovered. The changes the plaintiff ultimately made, which turned failure into success, were not obvious to ordinary mechanical skill. They were the result of much study, and persistent experiments, extending over a period of about two years, by one possessed of special knowledge and experience. All this, we think, is distinctly proved. The most important improvement which the plaintiff devised was the dish-shaped knife. This was a radical change. In the rotary knife of the earlier patent the plane of the cutting edge was tangent to the surface of the fruit, but in the machine of the 1880 patent the plane of the cutting edge is perpendicular, and substantially normal, to the spherical surface of the fruit. Thus the old difficulty, arising from the fruit getting down on the side of the knife, was entirely obviated. The cutting edge of the dish-shaped knife always bears the same relation to the fruit, no matter what its shape or size may be, and it pares every part of the fruit with equal facility.

We do not feel called on to discuss with particularity the numerous other prior patents put in evidence to sustain this branch of the defense. None of them is anticipatory of the plaintiff's improvement. Nor do we find in them anything suggestive thereof.

The plaintiff's fruit-paring machine of 1880, here involved, was devised with special reference to paring peaches, and it is proved that it was the first machine which successfully did that work. Before it was put upon the market, peaches were pared by hand. Its undoubted utility was quickly perceived by the trade, and immediately it went into extensive public use. This last-mentioned fact, of itself, it is well settled, is evidence of patentable novelty, and in a doubtful case will turn the scale in favor of the patentee. Smith v. Vulcanite Co., 93 U. S. 486; Magowan v. Belting Co., 141 U. S. 332, 343, 12 Sup. Ct. Rep. 71; Topliff v.

Topliff, 145 U. S. 156, 12 Sup. Ct. Rep. 825. In Loom Co. v. Higgins, 105 U. S. 580, 591, it is said:

"It may be laid down as a general rule—though, perhaps, not an invariable one—that if a new combination and arrangement of known elements produce a new and beneficial result, never attained before, it is evidence of invention."

There the new and useful result upon which the patent was sustained was the greatly increased effectiveness of a loom in production.

In Consolidated Safety-Valve Co. v. Crosby Steam Gauge & Valve Co., 113 U. S. 157, 179, 5 Sup. Ct. Rep. 513, in which the patent sued on was adjudged to be valid, we find this language, which is apposite here:

"Richardson's invention brought to success what prior inventions had essayed, and partly accomplished. He used some things which had been used before, but he added just that which was necessary to make the whole a practically valuable and economical apparatus. The facts that the known valves were not used, and the speedy and extensive adoption of Richardson's valve, are facts in harmony with the evidence that his valve contains just what the prior valves lack, and go to support the conclusion at which we have arrived on the question of novelty."

In the Barbed-Wire Patent, 143 U. S. 275, 283, 12 Sup. Ct. Rep. 443, 446, it is said:

"In the law of patents it is the last step that wins. It may seem strange that, considering the important results obtained by Kelly in his patent, it did not occur to him to substitute a coiled wire in place of the diamond-shaped prong, but evidently it did not; and, to the man to whom it did, ought not to be denied the quality of invention."

In Gandy v. Belting Co., 143 U. S. 587, 594, 12 Sup. Ct. Rep. 598, it is said:

"In view of the fact that previous attempts—of which there appear to have several—to make a practical canvas belt had been failures, and that Gandy had been experimenting with the subject for several years before he discovered that a change was necessary in the structure of the canvas itself, we do not think his improvement is a change in degree, only, or such a one as would have occurred to an ordinary mechanic, and our opinion is that it does involve an exercise of the inventive faculty."

These decisions fully justify the conclusion we have reached, upon a careful consideration of the proofs, that the patent in suit discloses patentable novelty, and is valid.

The master's report was based altogether upon the profits actually realized by the defendant from his sales of infringing machines. The defendant was charged with the amount received by him from sales, as stated by himself. We are not convinced that the master erred in his finding of the cost of manufacture. In the accounting, besides a credit for the cost of manufacture, as found by the master, and a credit for advertising, the defendant was allowed for freight and cartage, and discounts to purchasers. We think the master was right in disallowing the lumping sum which the defendant claimed for "clerk hire, selling expenses, rent, and insurance." That was a mere estimate, unsupported by evidence. There was no way of testing its accuracy, and for this the defendant was responsible. He kept no separate account,

connected with this particular branch of his business, of those items. The claim rested altogether upon an arbitrary apportionment of the expenses connected with his general business. We do not see upon what principle the defendant is entitled to an allowance for the sum he paid for the Cottrell patents, and the cost of his patterns. They remain his property. These credits were properly disallowed. Crosby Steam Gage & Valve Co. v. Consolidated Safety Valve Co., 141 U. S. 441, 12 Sup. Ct. Rep. 49. If, in the manufacture of the infringing parers, any advantage resulted from the use of the Cottrell patents, the burden was upon the defendant to show it. Elizabeth v. Pavement Co., 97 U. S. 126. But there was no satisfactory evidence of such advantage. We think the evidence fully warrants the conclusion that the entire value of the infringing machines made and sold by the defendant was due to the invention covered by the patent in suit, and therefore the plaintiff was entitled to the whole profits realized. Elizabeth v. Pavement Co., supra; Crosby Steam Gage & Valve Co. v. Consolidated Safety-Valve Co., supra. The account, as stated by the master and confirmed by the court, seems to us to be substantially correct in all particulars.

The decree of the circuit court is affirmed.