KRAJEWSKI et al. v. PHARR et al.

(Circuit Court of Appeals, Fifth Circuit. December 4, 1900.)

No. 849.

1. PATENTS—CONSTRUCTION OF CLAIMS.

Features of a patented device described in the specification as preferable, but not enumerated in the claims, do not constitute limitations of such claims.

2. SAME.

In construing the claims of a patent, the meaning of the language employed must be ascertained by applying it to the subject-matter which it describes; and whether a term is used in an exact or only in an approximate sense is to be determined by considering whether exactness is required, to accomplish the result to be attained.

3. SAME—PATENTABILITY—NEW AND IMPROVED RESULTS.

A device for breaking and cutting sugar cane to facilitate its crushing when fed into the mill, by which the product of the mill is nearly or quite doubled, and a larger percentage of juice extracted from the cane, cannot be denied patentability because its parts, taken separately, are old and well known, nor because the change from prior devices designed to accomplish the same general result, but which were only successful in a small degree, to the device of the patent, would seem, after the device was made, to have been obvious, where in fact the patentee was the first to take the final step which made a successful machine.

4. SAME—MACHINE FOR CUTTING AND BREAKING CANE.

The Krajewski patent, No. 349,503, for a machine for breaking and cutting cane preparatory to its being fed into the mill, shows patentable novelty, was not anticipated, and is valid; also, held infringed by a machine which accomplishes the same result in practically the same manner.

Pardee, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

The appellants, Thomas F. Krajewski, Alfonso Pesant, José A. Pesant, and Albert Grossman, under the firm name of Krajewski, Pesant & Co., filed a bill in the circuit court against the appellees, John N. Pharr and John S. Bussey, partners under the firm name of Pharr & Bussey, for the infringement of letters patent No. 349,503, issued on September 21, 1886, to the appellant Thomas J. Krajewski and to James L. Cochrane, as assignee, for a machine for breaking and cutting cane. Cochrane, the assignee, having died, the title to the one-half interest in the patent owned by him was duly assigned by his administratrix, Jeanette D. Cochrane, to the appellants. The object of the invention was stated by the patentees to be "to prepare any kind of cane and other substances, more especially sugar cane, so as to facilitate its crushing or pressing, and the extraction of juice." The machine is illustrated in the accompanying drawing.

And its construction and mode of operation may be best explained in the language of the specification: "In the accompanying drawings, Fig. 1 is a plan or top view of a mechanism embodying my invention. Fig. 2 is a vertical longitudinal section of the same. Similar letters of reference designate corresponding parts in both figures. The breaking or cutting mechanism consists, essentially, of two rollers, D, E. B designates the pressing rollers or the mill. C designates an endless carrier for the cane. The rollers, D and E, are preferably composed of a number of collars keyed to or otherwise

Fig. 1

Fig. 2

fastened on two shafts, d and e. The ends of these shafts, projecting beyond the collars, form journals, which are supported in bearings, A. These bearings are arranged on two pedestals or frames, F, G. These rollers, D, E, are provided externally with teeth. These teeth are approximately parallel to each other, and are zigzagged from end to end of the rollers, or parallel with the axes thereof. The teeth of each roller do not, however, touch those of the other roller. The rollers are made of collars fitted on shafts in the manner described, to facilitate their manufacture. The teeth on each collar run obliquely, and those of adjacent collars extend in reverse directions. In other words, the teeth on alternate collars extend in the same direction, and the teeth on the intermediate collars extend at reverse inclines thereto. It will therefore be seen that continuous zigzag teeth extending from end to end of the rollers are formed by properly adjusting the collars on the shafts. The edges of the teeth are made more or less sharp, so as to cut or to break only, and not to primarily act as pressing devices. At the ends of the shafts, d, e, are fastened two equal intermeshing gear wheels, m, only one of which is shown in the drawings. These gear wheels maintain the two rollers, E, D, in the same relative position with their teeth, intermeshing and equidistant from each other. Provision will preferably be made for adjusting one of the rollers bodily towards and from the other. This can be done by arranging the bearings of one in housings and combining screws with them in a well-known manner. Motion may be transmitted to these rollers through the agency of gear wheels or belts and pulleys in any known way. The pressing rollers, B, may be of ordinary form, provided with smooth surfaces, and arranged in frames in proper relation with each other to press the juice out

of cane supplied to them. They may be closer together than ordinarily, because they have only to press the cane, and not to additionally break and cut it up. The endless carrier, C, may be of any approved construction. The cane is carried by it up an incline to the rollers, D, E, and it descends thence along a downward incline or chute, L, to the rollers, B. A bridge, H, extends between the carrier, C, and the rollers, D, E. Below the roller, D, is a pan, N, for catching any juice which may run from the cane. The operation is as follows: Cane is carried on the cane carrier, C, and 'delivered on the bridge, H, thereby bringing it within reach of the teeth of the breaking and cutting rollers, D, E. These preferably run faster than the carrier, C, and will draw the cane between them, their teeth cutting and breaking it and partly squeezing it. Whatever juice is expressed will fall into the pan, N. The broken cane will fall on the incline or chute, L, and slide along the latter to the rollers of the grinding mill or rollers, B, which press out as much of the remaining juice as possible. By regulating the distance between the breaking and cutting rollers, D, E, the cane may be only broken, and the teeth made to only partly cut into it, or the cane may be cut up into short pieces, as may be desired. I prefer the teeth of the rollers, D, E, to run diagonally or in zigzag lines, because, as the cane is usually thrown on the carrier in various positions, it frequently reaches the rollers in a position parallel thereto, and, entering between the teeth thereof in the same parallel line would be delivered from the rollers without being cut; but, if the cane is placed on the carrier so as to reach the rollers in a position perpendicular thereto, straight teeth running parallel therewith can be used. The two cutting rollers may be placed in close proximity to the pressing rollers, and be even placed in the same pedestals therewith. They may be placed at any distance from the pressing rollers, or even in the position perpendicular to that of the pressing rollers. It may be desirable to have more than two cutting rollers used, so as to break and cut up cane in very small pieces." The machine used by the defendants, and which it is claimed by the appellants infringes theirs, was manufactured by the Birmingham Machine & Foundry Company, of Birmingham, Ala., but has not been patented. In their answer the appellees denied infringement, and submitted the following additional issues: "(1) Nonpatentability of the matters described in the specification and in the claim in the patent in suit, if tested by its own literature, or by the state of the art to which it relates. (2) Invalidity by reason of anticipation, prior publication, and public knowledge of the device, combination, or mechanism sought to be patented, and its prior public use before alleged invention of Krajewski." The cause was heard upon the pleadings and proofs, and the court directed a decree dismissing the bill. From the decree thus rendered the appellants have appealed to this court.

Edwin H. Brown and J. D. Rouse (Wm. Grant and Charles S. Jones, on the brief), for appellants.

J. R. Beckwith, for appellees.

Before PARDEE and SHELBY, Circuit Judges, and MAXEY, District Judge.

SHELBY, Circuit Judge, after stating the case as above, delivered the opinion of the court.

There has been in use for a great many years what is known as the "three-roll mill" for compressing the juice from sugar cane. It consists of three rolls, mounted and framed, rotated by gear wheels. The rolls were made sometimes with and sometimes without grooves. The purpose of the grooves was to firmly hold the cane as it was drawn between the rolls. Cane of full length was passed between the upper and front lower rolls, and the crushed mass was then made to pass between the top and rear lower rolls. The juice pressed out was caught in a pan, and the bagasse removed by a belt. The mill was sometimes so constructed as to place the rolls upright in the

frame, and then, when the rolls contained grooves or channels, their function was not only to firmly hold the cane, but also to receive and carry the expressed juice to the pan or collecting trough below. In the use of these mills, unaided by any machine or process to prepare the cane, there was great loss, on account of the failure of the mill to express all of the juice. This is shown by the evidence, and seems to have been a matter of common knowledge. To secure better results, it was evident that the cane must have preliminary treatment. The record shows that several attempts preceded Krajewski's to make a machine to prepare the cane for the mill. The British patent, No. 2,586, of 1882, is a device for splitting and partially crushing the cane. Faure's patent, No. 250,720, Ferron's patent, No. 279,235, Chapin's patent, No. 321,007, Newell's patent, No. 186,-100, and the Hungerford patent, No. 346,817, are all devices intended to prepare the cane for the mill. Each of them may briefly be described as a cane shredder. They are devices for tearing or shredding the cane. The result was usually produced by toothed rolls geared to rotate at different speeds. The result of the work of the shredders is to break or tear or split the stalk longitudinally, and so reduce the work of the three-roll mill. None of these machines was constructed to cut or break the cane in short lengths transversely. The shredders did not cut the cane in short lengths, so as to secure a uniform feed of it to the mill. The Krajewski machine is not a shredder, but a machine for breaking or cutting cane. It is not made to tear, shred, or split the cane, but to cut or break it transversely in short pieces, so that the three-roll mill may be fed with it in a uniform manner. It does not tear the cane longitudinally, or lacerate the fibre, so as to produce a mass of shredded stalk, irregular in volume. The result produces pieces transversely cut or broken. The fact that the Krajewski machine produced results so different from the shredders indicates a difference in its parts and mechanism. The Krajewski machine contains two rolls having teeth which are zigzag and intermeshing, and when intermeshed equidistant from each other, and of such sharpness that they can transversely cut or break cane into short pieces. The rolls are maintained in position and proper relation by gear wheels, so that the teeth of the two rolls do not come in contact side to side, but pockets or spaces are left between them. Each roll with its teeth is different from the shredders. The two, being used together, are wholly unlike the shredders in the result produced. The Krajewski machine is much used in connection with the three-roll mill. When so used the function of the mill is to press the cane which is already cut and broken by the machine. The evidence shows that the use of the machine greatly increases, and probably doubles, the output or capacity of the three-roll mill. The machines have been on the market since 1886. They have been sold and are in use in Texas, Louisiana, Cuba, Mexico, Hawaiian Islands, and British West Indies. It has been introduced into nearly all sugar-growing countries, notwithstanding the fact that the cost of establishing a plant, including the three-roll mill, is from $8,000 to $13,000, according to the size of the rolls and the conditions under which the plant is erected.

The Krajewski patent contains the following claim:

"The combination of rollers provided externally with more or less sharp teeth having a zigzag trend in the direction of the length of the rollers, said teeth intermeshing but not coming in contact with each other, and when intermeshed being equidistant from each other, said rollers being geared together in order to maintain their relative positions toward each other, substantially as specified."

A brief comment on some of these words and phrases is required. The patent does not require the rolls to be formed in sections. The specification provides that the rollers are "preferably composed of a number of collars keyed to or otherwise fastened on the shafts." Features described as preferable do not constitute a limitation of the claim. "When the inventor says, 'I recommend the following method,' he does not thereby constitute such method a portion of his patent. His patent may be infringed, although the party does not follow his recommendation, but accomplishes the same end by another method." Sewall v. Jones, 91 U. S. 171, 186, 23 L. Ed. 275. It will be observed that the teeth of the two rolls are to intermesh, but not come in contact with each other. This language does not mean that the teeth of one roll may not come in contact with the other roll. The phrase "more or less" has been commented on as being vague and uncertain. The rollers are provided with teeth "more or less sharp." If the word "sharp" had been used alone, it would have been subject to the same criticism. The phrase "more or less sharp" is indefinite, and necessarily so, because of the limits and imperfection of language. Taking the words in connection with the context and the specification (the only fair way to consider them), they mean sufficiently sharp for the purpose sought (the cutting of the cane). The phrase is in current use to describe or qualify. Mr. Justice Field, in Glue Co. v. Upton, 97 U. S. 3, 6, 24 L. Ed. 985, uses the phrase: "But to render the article new, in the sense of the patent law, it must be more or less efficacious, or possess new properties by a combination with other ingredients." No word, perhaps, exists, that the learned justice could have selected, that would show with certainty how efficacious the article must be. And no word can be selected to show exactly how sharp the teeth must be. It seems to us sufficient to say "more or less sharp," and that this means sufficiently sharp for the purpose shown by the specifications. The question of infringement, which will be considered later, has, in some of the arguments presented, been made to turn on the meaning of the word "equidistant" as used in the patent. The teeth when "intermeshed being equidistant from each other,"—what is meant by these words? We must, of course, look to the connection in which a word is used, to get its intended meaning. The drawings and specification show that the teeth of one roll fall between the teeth of the other, and in the depressions between them. The purpose of this adjustment is, in part, to leave spaces on opposite sides of the teeth, adapted to receive the pieces of cane cut or broken off by the teeth. Was it material that these spaces should be of the same size on each side of the teeth? If slightly different in size, they could still receive the cane. This fact indi-

cates that the meaning was that the teeth of one roll were to fall approximately rather than exactly midway between the teeth of the other. The word "equidistant" must, we think, include any position that is sufficiently midway to attain the purpose of the invention. The meaning of letters patent, like other grants or written instruments, must be ascertained by the language employed, as applied to the subject-matter. Robinson v. Sutter (C. C.) 8 Fed. 828; Adams v. Iron Co. (C. C.) 26 Fed. 324; Sayre v. Scott, 5 C. C. A. 366, 55 Fed. 971.

It is claimed by the defendants that the Krajewski machine contains no patentable novelty; that the combination is merely the aggregation of well-known devices. A machine must be constructed of known things. Unless the aggregation is clearly obvious, such as would be suggested to any one skilled in the art, it cannot be an answer to the claim of novelty in a machine consisting of many parts to segregate its parts, and say that each of them is well known and has been long in use. Invention would not often be equal to the test of originality and novelty if the parts of the machine invented are subjected separately to that test. The parts of a machine when segregated may be ancient and well known, and yet the completed device in the aggregate altogether novel. Originality sometimes consists in new combinations. If it be conceded that the machine is only a combination of old and known devices, the patent is not invalid, unless the combination was an obvious one for obtaining the advantages proposed,—one that would occur to any one skilled in the art. The idea of producing a combination or machine that would cut the cane in short lengths did not occur to any one of the many mechanics who designed and made the various shredders. They were intended to prepare the cane for the mill, but the machines made were shredders, and not cutters and breakers of the cane. To the mechanics making the shredders the combination of devices adopted by Krajewski was not obvious. When made, it appears to be very plain. It accomplishes the end sought in the art. It increases greatly the product of the three-roll mill. In Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177, an improvement in looms for weaving pile fabrics was held patentable which consisted of such a new combination of known devices as to give to a loom the capacity of weaving 50 yards of carpet a day, when before it could only weave 40. In that case the supreme court said, speaking through Mr. Justice Bradley:

"It is further argued, however, that, supposing the devices to be sufficiently described, they do not show any invention, and that the combination set forth in the fifth claim is a mere aggregation of old devices, already well known, and therefore it is not patentable. This argument would be sound if the combination claimed by Webster was an obvious one for attaining the advantages proposed,—one which would occur to any mechanic skilled in the art. But it is plain from the evidence, and from the very fact that it was not sooner adopted and used, that it did not, for years, occur in this light to even the most skillful persons. It may have been under their very eyes, they may almost be said to have stumbled over it, but they certainly failed to see it, to estimate its value, and to bring it into notice. * * * At this point we are constrained to say that we cannot yield our assent to the argument that the combination of the different parts or elements for attaining the

object in-view was so obvious as to merit no title to invention. Now that it has succeeded, it may seem very plain to any one that he could have done it as well. This is often the case with inventions of the greatest merit. It may be laid down as a general rule, though perhaps not an invariable one, that if a new combination and arrangement of known elements produce a new and beneficial result, never attained before, it is evidence of invention. It was certainly a new and useful result to make a loom produce fifty yards a day, when it never before had produced more than forty; and we think that the combination of elements by which this was effected, even if those elements were separately known before was invention sufficient to form the basis of a patent."

The aim of all these inventors and mechanics who invented and made the various machines for preparing the cane was to make one that would so prepare the cane that the three-roll mill could press out of the cane approximately all of its juice. For many years machines were produced that would only tear the cane longitudinally or strip it or shred it. This lessened to some extent the labor of the mill, and was of some benefit. But it was subject to many objections, as shown by the evidence. The idea of producing a machine that would cut or break, and not tear or shred, seems to have occurred first to Krajewski, or at least he was the first to produce such a device. In view of the fact that the shredded cane in full length, or the split and torn cane, would clog the mill, producing unequal pressure from want of uniformity, it is strange that Krajewski's idea did not occur to the prior inventors. The evident fact that a uniform feed of cane in short lengths would permit the rolls of the mill to run nearer each other, allowing greater and more uniform pressure, would, it seems, have suggested the necessity of a different device or combination. The shredders failed to properly prepare the cane for the mill. The Krajewski machine succeeds. In Re Barbed-Wire Patent, 143 U. S. 275, 282, 283, 12 Sup. Ct. 443, 450, 36 L. Ed. 154, Mr. Justice Brown said:

"Under such circumstances courts have not been reluctant to sustain a patent to the man who has taken the final step which has turned a failure into a success. In the law of patents it is the last step that wins. It may be strange that, considering the important results obtained by Kelly in his patent, it did not occur to him to susbtitute a coiled wire in place of the diamond shape prong, but evidently it did not; and to the man to whom it did ought not to be denied the quality of inventor. There are many instances in the reported decisions of this court where a monopoly has been sustained in favor of the last of a series of inventors, all of whom were groping to attain a certain result, which only the last one of the number seemed able to grasp."

Other authorities may be cited tending to sustain our conclusion that the Krajewski patent is valid. Schroeder v. Brammer (C. C.) 98 Fed. 880, 888; Dudley E. Jones Co. v. Munger Improved Cotton Mach. Mfg. Co., 1 C. C. A. 158, 49 Fed. 61; Consolidated Safety-Valve Co. v. Crosby Steam Gauge & Valve Co., 113 U. S. 157, 5 Sup. Ct. 513, 28 L. Ed. 939; Smith v. Vulcanite Co., 93 U. S. 486, 495, 23 L. Ed. 952; Magowan v. Packing Co., 141 U. S. 332–343, 12 Sup. Ct. 71, 35 L. Ed. 781; Potts & Co. v. Creager, 155 U. S. 597, 15 Sup. Ct. 194, 39 L. Ed. 275.

The question of infringement remains to be considered. The machines alleged to infringe the patent were made by the Birmingham

Foundry & Machine Company. Moffett, the pattern maker and draftsman of the company, admits on cross-examination that he made the drawings of the machines from advertisements of the Krajewski machines, and from an inspection of two of the Krajewski machines which he examined on a Louisiana plantation. The evidence, including the drawings of the two machines, shows that they are substantially the same. They are each provided externally with zigzag teeth. The edges of the teeth are comparatively sharp. The spaces between the teeth are concave in cross section. The teeth intermesh, the rolls being arranged in such relation to each other that the teeth of the one project into the spaces between the teeth of the other, and this relation is maintained by gear wheels fixed to journals of the rolls. In neither machine is there contact between the teeth of the two rolls. Neither machine is operated by contact of the teeth of one roll with those of the other. The evidence shows that in the defendants' machine the teeth of one roll come in contact with the circular space between the teeth of the other roll. In the Krajewski machine it is specified that there is no contact of the teeth of one roll with the teeth of the other, but it is not specified that the teeth of one roll do not touch the concave space between the teeth of the other. The statement of the purpose to cut the cane would indicate such contact. This is a matter, however, dependent on the adjustment of the rolls. The evidence shows that in the defendants' machines the teeth of the rolls, as they intermesh, are not equidistant from each other. The teeth of one roll intermesh not in the center of the concave space between the teeth of the other roll, so as to be equidistant, but they touch the roll at one side from the center of the depression between the teeth. Does this make any substantial difference in the machines? The purpose and dimensions of the Krajewski machine indicate that it would not be possible to construct it so that the teeth would intermesh so as to be, with mathematical precision, equidistant from each other. The rolls of the machines, as manufactured, are from 5 to 6 feet long and 24 to 26 inches in diameter. If adjusted with mathematical nicety, the severe strain and work would make such adjustment temporary. The unavoidable backlash would make it impossible to use the machines and keep the teeth of one roll pointing to or touching the exact center of the depression between the teeth of the other roll. If it could be so cast, it would not so remain. The word "equidistant," as used in the patent, does not require adjustment with mathematical precision. The word must be considered in connection with the context. The idea was that the teeth were not to touch each other, but to come within the concave space or depression between the rolls. The fact that the two machines differ slightly as to the distance from each other of the intermeshing teeth cannot, we think, be very material. It seems to us that the machine manufactured by the Birmingham Foundry & Machine Company, and used by the defendants, is practically the same machine as Krajewski's, and that it produces the same results. In Potts & Co. v. Creager, 155 U. S. 597, 609, 15 Sup. Ct. 194, 39 L. Ed. 275, in holding that one machine infringed the patent of another, Mr. Justice Brown, delivering the opinion of the court, said:

· "Defendants' machine, in its construction and operation, is substantially the same as plaintiffs'. Instead, however, of casting the shredding roller with a solid face, forming longitudinal grooves therein, and fixing the steel bars in the grooves, defendants cast the cylinder in the form of a skeleton or spider; the knives being respectively fastened to the several arms projecting from the hub, one knife to each arm, and forming the periphery by filling in metal plates between the knives. The cylinder, when its numerous parts are bolted together, is a perfect roll with a solid face, having cutting bars projecting from the slots or grooves thus formed, and adjustibly secured therein by means of bolts passing through them. The operation is the same as that of the Potts machine, and it accomplishes practically the same result by practically the same means."

· Other authorities may be cited as sustaining the conclusion of the court that the patent has been infringed. Roller-Mill Co. v. Coombs (C. C.) 39 Fed. 25, 33; Schroeder v. Brammer (C. C.) 98 Fed. 880, 881; Beach v. Box-Machine Co. (C. C.) 63 Fed. 597; Manufacturing Co. v. Beach, 18 C. C. A. 165, 71 Fed. 420; Westinghouse v. Power-Brake Co., 170 U. S. 537, 18 Sup. Ct. 707, 42 L. Ed. 1136. The decree of the circuit court is reversed, and the cause remanded for further proceedings in conformity with the opinion of this court.

PARDEE, Circuit Judge (dissenting). I cannot find that in the alleged patent there is sufficient novelty to warrant a monopoly. If, however, the patent is valid, then it is a combination patent of old and well-known elements, and ought to be strictly construed; and, in the matter of infringement, the case should show that all the elements of the combination are employed, and in the manner as set forth in the claim. It is shown by the file wrapper that in the original specifications the rollers are provided externally with teeth resembling those of a geared wheel. The teeth of each roller do not, however, touch those of the other roller, and the teeth are made to run lengthwise of the roller in zigzag lines, are more or less sharp, and the two rollers are maintained in such relative position that the teeth of one roller will always be midway between the two teeth of the other roller. In the second claim the rollers are provided with teeth extending past each other, but not touching. In the fourth claim the rollers are provided with zigzag teeth extending past each other, but not touching. The patent office had many criticisms to make upon the specifications, and particularly with reference to the zigzag teeth, and, among other suggestions, suggested striking out in the specifications the description as to the teeth being midway, etc., and the substitution of intermeshing teeth, and the office rejected all claims,—claims 1 to 5 on the patent of Ferrin, No. 279,235, and the patent of Vogel, No. 181,382, and claim 3 on the patents of Ferrin and Chapin. In a few days the applicant amended his application so as to provide for zigzag teeth with more or less sharp edges, to be maintained in such relative position to each other that their teeth should intermesh, and, still finding trouble at the patent office, a few days later again amended by putting in an alleged new claim for rollers provided externally with zigzag teeth extending throughout their lengths, the teeth upon one roller intermeshing with the teeth upon the other roller, and still another amendment canceling all claims, and making a claim for a combination of rollers provided externally with sharp teeth inter-

meshing, but not coming in contact with each other, and when intermeshed being equidistant from each other. In the argument submitted with these amendments, it was claimed that the nature of the zigzag teeth was now more clearly described, and that the objections of the patent office were otherwise fully met. Thereupon the office ordered an interference in the matter with regard to the patent of Henry Hungerford, which related to the collars which were used on the rollers. This interference seems to have been settled by agreement between the parties, and thereupon the applicant filed an amendment canceling all other claims, and substituting therefor a claim for a combination with pressing rollers; the rollers provided externally with sharp teeth extending approximately parallel with each other throughout the length of the rollers, and said teeth intermeshing, but not coming in contact with each other, and when intermeshed being equidistant from each other; said rollers being geared together in order to maintain their relative positions towards each other substantially as specified,—following that with another amendment striking out the word "pressing," as describing the rollers, and inserting the words "more or less," as descriptive of the sharp teeth, suggesting that this amendment would be found to conform to the suggestions of the examiner, and not be met by references. An interference was ordered with regard to that claim which was subsequently decided in favor of the applicant, and the patent was allowed. It will be noticed from these extracts from the file wrapper that the office required an amendment positively and distinctly regulating the intermeshing of the teeth on the rollers, and only passed the application when the applicant distinctly described his claim in regard to the teeth that they should be, when intermeshed, not midway, but equidistant from each other. In this suit the counsel for appellant claims that the word "equidistant" is immaterial, and may be wholly omitted, and still the validity of the patent maintained; and the opinion of the court seems to be that the word "equidistant," as used in the claim, is elastic, and means no more than "about midway." It seems that the patent went through the office on striking out "midway" and inserting "equidistant," and now goes through this court by practically reversing,—construing "equidistant" to mean near or about midway. On the case made, I am not satisfied that the defendants and appellees should be held as infringers of a valid patent.