SMEETH et al. v. PERKINS & CO., Limited, et al.

(Circuit Court of Appeals, Third Circuit. September 15, 1903.)

No. 32.

1. PATENTS—CONSTRUCTION OF CLAIMS—STATEMENTS OF PREFERABLE MODE OF CONSTRUCTION.

Features of construction which the specification of a patent recommends or describes as preferable do not thereby become essential parts of the patent or limitations of the claims.

2. SAME—INFRINGEMENT—BOSH-PLATES FOR BLAST FURNACE.

The Scott patent, No. 452,618, for bosh-plates for furnaces, is valid (excepting claim 6), and covers a meritorious invention, the essential feature of which is to provide separate recesses in the furnace wall in which the bosh-plates are set, and from which they can be removed freely, being so independently set as not to be affected by the expansion or contraction of the wall. Except as to claim 7, the claims are not lim-

ited to bosh-plates constructed internally with a tortuous water passage, but cover any plate having a water passage extending through it for the passage of a current of water. Claims 1 to 5 so construed, and *held* infringed.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

James I. Kay, for appellants.
Marshall Christy and Wm. L. Pierce, for appellees.

Before ACHESON and DALLAS, Circuit Judges, and KIRKPATRICK, District Judge.

ACHESON, Circuit Judge. This is an appeal from the decree of the Circuit Court dismissing the complainants' bill in equity, brought for an alleged infringement of letters patent No. 452,618, dated May 19, 1891, for an improvement in bosh-plates for furnaces, granted to James Scott, and of which the complainants in the bill became owners.

The specification of the patent states that the "invention consists of an improvement in the setting of bosh-plates in the wall of a blast furnace and in an improved construction of the bosh-plates themselves"; that heretofore, for the purpose of preventing the corrosion and destruction of the walls of a blast furnace, caused by the intense heat in the furnace, "it has been customary to employ hollow plates built in the furnace wall, and provided with water connections, by which streams of water through the plates may be maintained," but that in the operation of the furnace these plates frequently crack, and permit the water to leak from them, with injurious effects particularly mentioned; that the broken plate must be removed as soon as the leak is ascertained and located, but that a great amount of labor is required to remove it, "since it necessitates the digging it out from the brickwork of the furnace," which weakens and injures the furnace structure, with loss of time, etc.; that heretofore it has been generally supposed that the reason for the breaking of the plates was that they were burned out by the heat of the furnace, and great care has been taken to keep up a constant stream of pure water, and to construct the water passages so that they should not be clogged by sediment, which would render them more liable to be burned"; that the inventor (Scott), however, has "discovered that the breaking of the plates has been caused not so frequently by burning as by the manner in which they have been set in the furnace wall," the practice having been to build them directly in the wall, with the bricks bearing on them from above and at the side and in intermediate spaces, so that when the brickwork expands and moves by reason of the heat of the furnace it strains the bosh-plates, and frequently breaks or cracks them. The specification and drawings describe and show the bosh-plates of the patent arranged in several horizontal series around the bosh of the furnace, the plates being made tapering in width and thickness and curved transversely on their upper surfaces so as to have a general wedge shape, and they are set in arched recesses built for their reception in the furnace wall.

The function of the arches, it is stated, is to support the furnace wall over the recesses so that they shall not cave in when the bosh-plates are removed, and so that the plates may be taken out and replaced easily without other rebuilding than luting the intervening space with clay. The boshes, it is said, should be of somewhat less dimensions than the recesses. It is stated that by thus setting the bosh-plates the wall of the furnace may expand and contract freely without crushing the plates and causing them to leak. A number of the plates of each series, it is stated, "are connected by pipes, 12, the outlet of one being connected with the inlet of the next, as shown in Fig. 2, so that the water may pass in succession through the plates"; and that, when it is desired to remove any of the bosh-plates, its inlet and outlet pipes are uncoupled, and then, because of the tapering shape of the plate, it may be drawn out from its recess. To replace the plate it is set again in its recess, luted with clay, and the water pipes reconnected. It is stated that the facility of removal and replacement of the bosh-plates which this improvement affords is of especial benefit in that it enables a leak to be located in case for any reason one should occur.

After this general description of the invention the specification contains the following clause:

"The preferred internal construction of the bosh-plates is illustrated in Figures 6 and 7. Each consists of a hollow plate having water inlet and outlet openings, 8 and 9, a partition, 10, forming a passage leading to the rear of the plate from the opening, 8, and cross-diaphragms or baffle-plates, 11, which cause the water to travel in a circuitous course between the back of the plate and the opening, 9. A very efficient cooling action is thus afforded by the plate."

The claims of the patent are as follows:

"(1) In combination with a furnace, a water-cooled bosh-plate set in a recess in the furnace wall, from which it is removable freely, said bosh-plate having a water passage extending through it for the passage of a current of water, and inlet and outlet pipes, substantially as and for the purposes described.

"(2) In combination with a furnace, a water-cooled bosh-plate set in an arched recess in a furnace wall, from which it is removable freely, said bosh-plate having a water passage extending through it for the passage of a current of water, and inlet and outlet pipes, substantially as and for the purposes described.

"(3) In combination with a furnace, a water-cooled inwardly-tapering bosh-plate set in a recess in the furnace wall, from which it is removable freely, said bosh-plate having a water passage extending through it for the passage of a current of water, and inlet and outlet pipes, substantially as and for the purposes described.

"(4) In combination with a furnace, a water-cooled bosh-plate set in a recess in the furnace wall, from which it is removable freely, and provided with a surrounding casing or layer of clay, said bosh-plate having a water passage extending through it for the passage of a current of water, and inlet and outlet pipes, substantially as and for the purposes described.

"(5) In combination with a furnace, a series of encircling water-cooled bosh-plates, set in recesses in the furnace wall, from which they are freely removable, said bosh-plates having water passages extending through them for the passage of water currents, and inlet and outlet pipes, substantially as and for the purposes described.

"(6) In combination with a furnace, a series of encircling water-cooled bosh-plates set in arched recesses in the furnace wall, from which they are

freely removable, and a band encircling the furnace at the arches, substantially as and for the purposes described.

"(7) A hollow bosh-plate having at the front end an inlet opening and an outlet opening, a passage, 10, which extends to the rear of the plate from one of said openings, and cross-diaphragm, 11, which extend alternately from opposite sides within the bosh-plate partially across the interior cavity thereof, forming a tortuous passage in said cavity leading from the passage, 10, to the second of said openings, substantially as and for the purposes described."

In disposing of this case the Circuit Court regarded the patent as valid (excepting the sixth claim), and stated that in actual practice the device of the patentee had proved to be "highly useful." With these views we are in agreement. Here we content ourselves with saying that upon an attentive examination of the proofs we find no reason to doubt either the validity of the patent (excepting claim 6) or the great merit of the invention it disclosed.

The principal question involved in this appeal relates to the construction to be given to the patent, and particularly to its first five claims, which the court below held the defendants had not infringed. As respects interior construction, the court, in its opinion, said that the patentee proposed to change the old form of bosh-plate to a plate "constructed internally with a tortuous water passage." Now, it is true that the specification shows and describes an internal construction of the bosh-plate whereby the water passing through it is given a "circuitous course," by means of diaphragms or baffle-plates placed in the cavity of the bosh-plate; but the specification expressly states that this is "the preferred internal construction," and this specific form is the subject-matter of claim 7. The terms of the other claims are quite different from the terms of the seventh claim. The bosh-plate called for by the claims from 1 to 5, inclusive, is described as "having a water passage extending through it for the passage of a current of water, and inlet and outlet pipes." There is no call in these claims for a "tortuous water passage," and no intimation that the water is to "travel in a circuitous course." The expressed purpose of the water passage is for "the passage of a current of water" through the bosh-plate. The cooling of the plate is what is aimed at, and this object is effected whether the water passes through the interior cavity of the bosh-plate from the inlet pipe opening to the outlet pipe opening by the natural and unobstructed course or travels in a circuitous course produced by interposed diaphragms or baffle-plates. The patentee, indeed, conceived the latter method to be preferable, but features of construction which the specification of a patent recommends or describes as preferable do not thereby become essential parts of the patent, or limitations of the claims. Sewall v. Jones, 91 U. S. 171, 185, 23 L. Ed. 275; Krajewski v. Pharr, 105 Fed. 514, 518, 44 C. C. A. 572.

In Winans v. Denmead, 15 How. 330, 341, 14 L. Ed. 717, the court said that:

"While it is undoubtedly true that the patentee may so restrict his claim as to cover less than what he invented, or may limit it to one particular form of machine, excluding all other forms, although they also embody his invention, yet such an interpretation should not be put upon his claim if it can fairly be construed otherwise."

In Klein v. Russell, 19 Wall. 433, 466, 22 L. Ed. 116, the rule was laid down that in construing a patent "the court should proceed in a liberal spirit, so as to sustain the patent and the construction claimed by the patentee himself, if this can be done consistently with the language he has employed."

This specification states that it has been "customary to employ hollow plates built in the furnace wall, and provided with water connections, by which streams of water through the plates may be maintained," but that, by reason of the plates being solidly set in the brickwork, they were frequently cracked and broken by the expansion and contraction of the furnace wall. The avoidance of this evil was the main object of the invention. The inventor's remedy, as disclosed with much fullness in his specification, was to provide in the furnace wall separate recesses in which the bosh-plates could be set, and from which they could be removed freely. This was the substance of the invention. Such was the view which finally prevailed in the Patent Office, as we shall soon see. The special internal form of bosh-plate whereby the water is given a circuitous course is altogether subordinate. It is explicitly declared to be only the preferred construction, and it is covered by a specific claim.

We are not able to see that by the proceedings in the Patent Office the first five claims of the patent were limited to a tortuous water passage in the interior of the bosh-plate, or to any structural water passage formed within and extending through the cavity of the bosh-plate. The facts, as disclosed by the file wrapper, are these: In the original application for the patent the claims from 1 to 5, inclusive, described the plate simply as "a water-cooled bosh-plate." This description, of course, included water-cooled bosh-plates in whatever way the cooling was effected by the use of water; for example, by using jets of water or spraying with water, as in the patent to Jones, No. 205,274, which the examiner cited against the application. The applicant then amended by inserting in the claims the words, "Said bosh-plate having a water passage extending through it for the passage of a current of water, and inlet and outlet pipes." It will be perceived that a tortuous water passage is not here mentioned, nor is any structural water passage extending through the bosh-plate, and independent of its cavity, hinted at. The passage of a current of water through the cavity of the bosh-plate is what was required for the cooling, and this, it seems to us, is what the amendment naturally implies. That the applicant and the Patent Office both so understood this language appears, we think, on the face of the file wrapper. The introduction of the words "and inlet and outlet pipes" in the amendment has significance. The function of these pipes is stated in the specification thus: "A number of the plates of each series are connected by pipes, 12, the outlet of one being connected with the inlet of the next, as shown in Fig. 2, so that the water may pass in succession through the plates." The passing or circulation of the water through the cavity of the bosh-plate, we think, is the thing contemplated and expressed in the amended claims.

Upon a second rejection of all the claims an appeal was taken to the examiners in chief, who reversed the primary examiner. Their

decision, upon which the patent issued, contains this pregnant passage:

"The essence of the alleged invention is the setting of the bosh-plates in the furnace wall so as to be removable freely therefrom, and so independent of the wall as not to share in its expansions and contractions. The claims have varying degrees of limitation, and claim 7 turns on a specific construction of bosh-plate."

"In Strobel's patent, cited, the bosh-plates are built 'ring-like into the bosh-wall of the furnace.' They are also air-cooled."

"Jones has no bosh-plates proper, cooled by a water circulation through the same, but open iron boxes, set into the brickwork of the furnace, and cooled by sprays of water directed upon their inner surface."

"Ellicott's patent is cited to meet claim 7, but it does not show appellant's specific construction of bosh-plate, nor do we deem it to be so suggestive thereof as to preclude invention. We find patentability, and reverse the examiner's decision."

Our construction of the amended claims by no means gives them the broad scope which the original claims had. The rejected claims covered a water-cooled bosh-plate in whatever way such cooling was accomplished. The amendment limits the claims to a bosh-plate cooled by the passage of a current of water through the same. We are unable to concur in the view of the court below that the defendants' bosh-plate does not come within the terms of the amended claims. We think it does. The water enters the defendants' bosh-plate by the inlet pipe and flows under pressure through the interior cavity of the plate to the outlet pipe. The plate therefore has a water passage extending through it for the passage of a current of water. So much even the defendants' expert admits. Confessedly, the defendants' bosh-plate is set in a recess in the furnace wall, from which it is freely removable.

As to the sixth claim, it is enough to say that we think the court below was right in holding it invalid.

The decree of the Circuit Court dismissing the bill is reversed, and the cause is remanded to that court, with direction to enter a decree in favor of the complainant in accordance with the views expressed in this opinion.