BOYER v. KELLER TOOL CO. et al.

(Circuit Court, E. D. Pennsylvania. June 24, 1901.)

No. 27.

PATENTS—INFRINGEMENT—PNEUMATIC TOOL.

The Boyer patent, No. 537,629, for a pneumatic tool, construed, and *held* limited, in view of the prior art, to the precise combination of elements shown, and, as so limited, not infringed by a tool made in accordance with the Keller patent, No. 647,415.

In Equity. Suit for infringement of patent. On final hearing.

Edward Rector and Frank P. Prichard, for complainant.
E. Hayward Fairbanks, for respondents.

J. B. McPHERSON, District Judge. The patent in suit is No. 537,629, granted April 16, 1895, for certain improvements in pneumatic tools; the character of the invention being described in the following quotation from the specification:

"My invention relates to that class of tools in which compressed air or other pressure medium acts upon a reciprocating piston to cause it to deliver rapid blows to the cutting tool movably held within one end of the casing or holder.

"It has for its object the production of a tool of this character which shall be of simple, compact, and economical construction, of high efficiency in operation, of the greatest possible strength and durability proportional to the size and weight of its constituent parts, and in which the shocks and jars occasioned by the reciprocation of the piston and its action upon the tool shall be reduced to the minimum. Its novelty consists in certain new constructions and arrangements and combinations 'and modes of operation, which will be hereinafter more fully explained and particularly pointed out in the claims.

"My new tool embodies as constituent elements a casing or holder containing a chamber in which the piston is confined and moves; a tool having its shank or stock fitted in a bore in one end of the casing, and projecting into position therein to directly or indirectly receive a blow from the piston at one end of the stroke of the latter; and an automatic valve mechanism controlling the admission and exhaust of pressure to and from the cylinder or piston chamber. In these general features my new tool resembles that heretofore patented to me by letters patent of the United States No. 277,-

448, dated May 15, 1883; and in some respects my present invention consists in improvements upon and modifications of said prior device, while in others it is a departure therefrom, and embodies entirely new constructions, arrangements, and modes of operation.

"Like my prior tool, my present one has a grasping handle secured to the end of the casing at which the valve mechanism is located, and provided with means within the grasp of the operator for controlling the admission of pressure to the tool, while at the opposite end of the casing the tool stock is fitted to reciprocate in the bore of the casing, and is adapted to be held and directed in its work by one hand of the operator while with the other he grasps the handle of the tool and admits and cuts off the pressure as necessary. The means for controlling the pressure supply in my present tool differs, however, from that of my prior one, and embodies elements of novelty which constitute certain features of my present invention, as hereinafter set forth as likewise does the means for securing the handle to the casing of the tool.

"In my prior device the piston, which operates as a hammer or striker for actuating the tool, was moved in both directions in its chamber or cylinder by the action of the compressed air; the latter being alternately admitted to and exhausted from the opposite ends of the cylinder. In my present tool the pressure supply is intermittently admitted to and exhausted from but one end of the piston chamber, to drive the piston forward to deliver its blow, while a constant pressure at the other end of the piston— preferably the mechanical pressure of a coiled spring confined within the front end of the piston chamber—is employed to return the piston to initial position. The automatic valve mechanism operates to first admit pressure to the rear end of the cylinder, behind the piston, to drive it forward and deliver a blow to the tool, and to then cut off the pressure supply and open the exhaust from said end of the cylinder, to permit the spring to throw the piston back to initial position. In my prior tool the automatic valve was operated by a mechanical connection with the piston. In my present one it is operated by pressure admitted to its opposite sides. I am aware that it is common in this art to operate the valve by such means, but heretofore in tools with which I have been familiar the pressure has been alternately admitted to the opposite sides of the valve and exhausted therefrom. In the valve mechanism which I employ the pressure medium is constantly admitted at full pressure to one side of the valve, acting upon a given area of the valve to constantly press it in one direction, and is intermittently admitted to the opposite side of the valve and permitted to act upon a greater area thereof, to overcome the opposing pressure and move the valve in the opposite direction, this intermittent admission of pressure to the valve and its exhaust therefrom being controlled by the movement of the piston in the cylinder. In my prior tool the valve chamber and valve were arranged parallel with the cylinder and piston, while in my present one they are arranged transversely across the rear end of the cylinder, between it and the grasping handle of the tool."

It will be observed—and there is no dispute upon this point—that the patent is for a combination of old and well-known devices. It has been attacked upon the ground that no invention is present, and that the patent lacks novelty; but, without deciding these points, I shall assume, for the purposes of this decision, that the patent is novel and discloses true invention. Certainly tools made under the complainant's patent, especially those made under later modifications thereof, have been very successful indeed, and have gone into extensive use. They permit much difficult work upon metal to be done at a large saving of cost and of physical exertion, and their value is sufficiently established by the general use made of them in shipyards, railroad shops, boiler works, and similar industrial establishments. The defendants manufacture or sell pneumatic tools under patent

647,415, granted April 10, 1900; and the complainant alleges that these tools infringe two groups among the claim of his patent; claims 5, 6, 8, 10, 12, 13, 15, 16, 17, 25, and 28, constituting the first group, and claims 42 to 48, inclusive, constituting the second group. It will be unnecessary, however, to examine any other claims than 5 and 47, since these are conceded by the complainant to be typical of the respective groups.

Claim 5 is as follows:

"In a pneumatic tool, the combination of a casing or holder containing a piston chamber, and adapted to hold a reciprocating tool at its front end, a piston in said chamber adapted to deliver a blow to the tool at the end of its forward stroke, resetting means for the piston exerting a constant pressure upon the piston, and against the resistance of which the piston is driven forward to deliver its blow to the tool, and an automatic valve confined in a fixed chamber at the rear end of the casing, and operated by constant pressure at one side of it, and intermittent pressure admitted to the other, for controlling the admission of pressure to the piston chamber behind the piston, substantially as described."

Every element of this claim is old, and therefore, assuming the combination to be patentably novel, I think it follows clearly that, if the defendants' tool omits any important element in the combination, supplying its place by a distinctly different device, the charge of infringement cannot be sustained. Meritorious as the complainant's tool appears to be, especially in its later modifications, it is in no sense a pioneer invention, as has already been stated, and it is not entitled to the benefit of the doctrine of equivalents. Therefore, when it is observed that in claim 5 an element essential to the operation of the tool is "resetting means for the piston, exerting a constant pressure upon the piston, and against the resistance of which the piston is driven forward to deliver its blow to the tool," whereas in the tool manufactured by the defendants there is no such device at all, its place being supplied by means which resets the piston by intermittent fluid pressure upon the forward end,—when this is observed, I say, it seems clear to me that the defendants' tool displays a different combination of elements, and therefore does not infringe. In other words, the complainant, in view of the prior state of the art, must be restricted to the precise combination claimed; and, as the element of constant pressure applied to the forward end of the piston as a resetting means is certainly essentially different from the element of intermittent pressure applied to the same end of the piston, the conclusion already stated seems to be inevitable. As the complainant took no expert testimony upon the first group of claims, it may be that his own opinion upon this point does not differ widely from the opinion I have just announced.

A similar conclusion, I think, must be reached concerning claim 47, which reads as follows:

"In a pneumatic tool, the combination, with the tool proper, of a grasping handle secured thereto, and having the pressure supply duct extending through it, a throttle valve in the handle for controlling said duct, and a lever confined in a recess in the handle for operating said valve, and projecting outside the recess at one end into position to be pressed by the hand of the operator, substantially as described."

In view of the prior art, this claim also should be narrowly construed, and confined to the exact device claimed by the patent. This seems to have been the complainant's own position while the application was pending in the patent office, and this group of claims was being considered there. Claim 47 had been rejected by the examiner, and in successfully urging a re-examination the complainant said:

"These patents [referring to those quoted by the examiner in support of the rejection] show it to be old to provide a tool of this character with a throttle valve controlled by means within the grasp of the operator's hand upon the handle of the tool; but applicant's claims and this feature of his invention are specifically limited to a construction in which the pressure supply duct extends through the handle, and has a throttle valve located within the grasping portion of the handle for controlling said duct. In none of the references, including the English patent, does the pressure supply duct extend through the grasping portion of the handle, nor in any of them is the throttle valve located therein. If applicant were broadly claiming means within the grasp of the operator's hand for controlling or operating the throttle valve, as would seem to be the examiner's idea of the claims, the references above referred to would all be pertinent; but, in view of the specific language of the claims and the explanation above given, it is thought the claims will be found allowable."

The claim was thereupon allowed. It seems to me that, in accordance with the established rule upon this subject, the complainant cannot now enlarge his claim so as to go beyond the specific limitation thus imposed; and, if this be true, I think it is clear that the handle of the defendants' tool is different in at least two respects: The pressure supply duct does not pass through the grasping portion of the handle, and the throttle valve differs in construction and method of operation.

With regard to the affidavit of Mr. Keller, it is proper to say that I have given it no weight, for the following reasons: It was made in another suit against different defendants, and refers to two other patents, neither of which is involved in this controversy. If relevant at all, it could only be admissible to contradict Mr. Keller; but he was asked no questions about the affidavit or its contents in his examination, and of course, therefore, the paper is not competent evidence for purposes of contradiction. Moreover, Mr. Keller is not a party to this suit, and therefore his ex parte affidavit, made in a suit to which the present defendants were not parties, cannot be admitted to their prejudice. It would have been easy for the complainant to examine the witness directly upon matters contained in the affidavit, and in that event such answers as were relevant would have been heard under the safeguard of cross-examination. But to decline such examination, and to attempt to supply its place by the introduction of the affidavit, cannot be permitted.

There being no infringement of the complainant's patent, the bill must be dismissed at his costs.