KIRCHBERGER et al. v. AMERICAN ACETYLENE BURNER CO. et al.

(Circuit Court, N. D. New York. August 5, 1903.)

1. PATENTS—PROCESS CLAIMS—VALIDITY.

The Dolan patent, No. 589,342, for a tip for acetylene gas burners, describes and claims a process for burning acetylene gas, and also a burner for carrying such process into effect. Claims 1 and 2, covering the process, are valid as describing and claiming a true process, producing a new and useful result, which may be carried out by any suitable apparatus, and are not merely descriptive of the use or function of the burner shown in the specification and drawings and claimed in the following claims.

2. SAME—ANTICIPATION—INOPERATIVENESS OF ALLEGED ANTICIPATORY DEVICE.

The defense of anticipation is not made out where the alleged anticipatory process or machine is inoperative or a failure, while that of the

---

¶ 2. See Patents, vol. 38, Cent. Dig. § 73.

patent is operative and successful, even though the same devices or parts are used, but combined in a new way.

**8. SAME—INFRINGEMENT—ACETYLENE GAS BURNER.**

The Dolan patent, No. 589,342, for a process of burning acetylene gas, which consists in surrounding a jet of gas with an envelope of air at the discharge orifice of the burner, for the purpose of preventing its combustion in immediate contact with the burner and until it has been projected some distance therefrom, and also for a burner-tip adapted to carry out such process, was not anticipated, shows invention, and is entitled to a broad construction, as embodying the first successful process and device for the purpose intended. Claims 1, 2, 3, and 4 construed, and *held* infringed.

**4. SAME—VALIDITY.**

A patent for a device which states that a part is preferably made of a stated material is not rendered invalid by the fact that when such part is made of a certain other material the device is inoperative.

**5. SAME—SUIT FOR INFRINGEMENT—STIPULATION AS TO ISSUES.**

Where a suit for infringement of a patent came on for hearing after the proofs had been closed, with an admission in open court as to the points in dispute, no claim being made against the complainant's title, such title is admitted, and cannot be thereafter questioned.

In Equity.

The bill of complaint in this action is filed for the purpose of enjoining and restraining the defendants from directly or indirectly making, constructing, vending, counterfeiting, or imitating an invention claimed to belong to the complainants, and alleged to be covered and protected by letters patent No. 589,342, issued to the Acetylene House Lighting Company, on application of Edward J. Dolan, as assignee, by mesne assignments dated August 31, 1897, and thereafter assigned by mesne assignments to Charles W. Iden, whereby he became and now remains the sole owner of said letters patent, and also for an accounting for damages alleged to have been sustained by the infringement of said patent.

Dickerson, Brown & Raegener, for complainants.

Frederick F. Church (Melville Church, of counsel), for defendants.

RAY, District Judge. The bill of complaint, after alleging the grant of the patent hereinafter mentioned and the assignment thereof to Charles W. Iden, accompanied by an allegation that he is now the sole owner thereof and entitled to recover for any past infringement thereof, alleges that said Charles W. Iden, said owner, on the 24th day of April, 1901, for good and valuable consideration and upon certain conditions, granted unto the complainants Moritz Kirchberger, Benno von Schwarz, George von Schwarz, and Philip von Frays, as copartners, the sole and exclusive right to make, vend, and use throughout the United States of America burners adapted to the burning of acetylene gas, and made in accordance with the said letters patent, for and during the entire term of such letters patent, and that the said licensees have fully complied with all the conditions and requirements of the said exclusive license, and that the same is still in full force and unrevoked. It is alleged that the licensees since they became the owners have expended large sums of money in and about the said invention, etc., and that the defendant the American Acetylene Burner Company, well knowing the premises and rights secured to the complainants, have infringed the complainants' rights within the Northern District of New York and elsewhere, unlawfully and wrong-

fully, and are threatening to continue said infringement, and that large damages have been sustained, etc. Notice of the infringement and violation of the rights of the complainants and a request to desist and refrain therefrom is also alleged.

The patent alleged to be infringed was issued upon application of Edward J. Dolan, August 31, 1897, for "Tip for Acetylene Gas Burners." The claims alleged to be infringed are as follows:

"(1) The process of burning acetylene gas, which consists in projecting a small cylinder of gas, in surrounding the same with an envelop of air insufficient to cause combustion of all the gas, and in finally supplying the gas with an additional amount of oxygen by allowing the stream of gas to expand above the burner-tip into contact with the air, thereby burning the same, substantially as described.

"(2) The process of burning acetylene gas, which consists in projecting toward each other two cylinders of acetylene gas, in surrounding the same with envelops of air insufficient to produce combustion of all the gas, and in finally causing the cylinders of gas to impinge upon each other and produce a flat flame, substantially as described.

"(3) The combination in an acetylene burner of the block, A, having the minute opening, C, the cylindrical opening, E, opening without obstruction to the atmosphere, and the air passages, a, substantially as described.

"(4) The combination in an acetylene burner of two air-mixing burners mounted upon a suitable support, and inclined toward each other, the said burners being each provided with an air-ejecting apparatus within the burner itself, substantially as described."

The specifications are as follows:

"This invention relates to a new and useful process for burning rich gases, particularly acetylene gas, and to a new and useful improvement in burners for carrying the same into effect.

"It is well known that great difficulties have been experienced in the making of a suitable burner for acetylene gas. The difficulties have largely been due to the fact that after a certain time of burning a deposit has been formed at the point of exit of the gas from the burner, which has gradually choked the outlet and distorted the flame. This difficulty is not cured by merely mingling air with gas before it is burned. The difficulty seems to be due to the fact that acetylene decomposes at about a red heat, forming benzol, carbon, hydrogen, and other compounds. If at this point of decomposition a receptive surface is present, the carbon is likely to deposit upon such surface, producing the difficulty above described. It is obvious that if a substantial separation can be made between the burner-surface and the acetylene as it issues from the burner this deposit is less likely to occur. This deposit has also been found in practice to be less when acetylene mingled with air is burned than when pure acetylene is burned.

"The burner which is the subject-matter of this application avoids the difficulties herein referred to, and by combining two independent gas jets at a proper angle produces a flat flame. These gas jets issue from two circular orifices, pass through a chamber, where they are surrounded by the indrawn air, and finally meet in space to produce a flat flame. I generally mount these jets upon two separate arms, having a proper inclination toward each other. This, however, is not essential, since they might be mounted in the same standard.

"The object of my present invention is to provide a gas burner of the character described, the construction of the burner being such as to effectually overcome the objections to former burners, hereinbefore noted, and to provide a burner the use of which will result in perfect combustion of the gas.

"To these ends, and to such others as the invention may pertain, the same consists in the peculiar construction of the burner, and in the combination, arrangement, and adaptation of parts, all as more fully hereinafter described, shown in the accompanying drawings, and then specifically defined in the appended claims.

"The invention is clearly illustrated in the accompanying drawings, which, with the letters of reference marked thereon, form a part of this specification, like letters of reference indicating the same parts throughout the several views, and in which drawings Fig. 1 is a central longitudinal section of a gas burner embodying my improvements; Fig. 2 is a like view of a modified form of the burner; Fig. 3 is a perspective view of the preferred form of burner shown in Fig. 1; Fig. 4 is a like view of the burner shown in section in Fig. 2; and Fig. 5 is a side elevation of a duplex burner.

"Reference now being had to the details of the drawings by letter, A designates a gas-burner tip which is preferably made of lava or other material of a like character adapted to the purpose. This tip is preferably made in a single piece, and may be provided with the usual screw threads, which serve to permit the ready attachment of the tip to the body portion of the burner.

"The tip, A, is, at a point at or near its longitudinal center, provided with a contracted passage or opening, C, which connects the two larger chambers or gas passages, B and E, the said cylindrical passage, E, terminating at the extreme end of the burner-tip, thus affording an enlarged passage for the gas.

"In order to prevent the deposit of carbon within the burner or at the burner top, and thereby insure a perfect combustion and a smokeless flame at the point where the same is formed, I provide a series of inclined air passages, a a, which lead into the enlarged passage, E, above the point at which the contracted opening, C, is provided. Ordinarily a single row or series of these air passages will be found to be sufficient, as is shown in Figs. 1 and 3 of the drawings, though, if for any reason it should be preferred, two or more may be provided, as shown in Figs. 2 and 4 of the drawings.

"In order to produce the best possible results in the use of the burner which I have described, I find it advisable to use the burner in duplex form or in pairs, as shown in Fig. 5 of the drawings. It will be observed that when thus employed the outlets or points of the burner-tips are inclined toward each other. The flames from the burner-tips unite at a point between and slightly above the plane of the burner-tips, where a flat flame is formed. The gas, being forced through the contracted openings within the burner under pressure, serves to produce a flame circular in section, and the uniting of these two flames produces a broad and uniform flame, having great illuminating power.

"The operation of this device seems to be that the gas under pressure escaping in a cylindrical jet through the opening, C, draws in on all sides an envelop of air through the openings, a. This is due to the fact that the chamber, E, is larger than the outlet, C, and to the fact that the air inlets, a, substantially surround the issuing gas jet. The result of this arrangement seems to be to so cool the outside of the flame as to prevent any deposit of carbon at the point of egress. It is, of course, essential that the gas have sufficient pressure—say, from three to four inches of water—to draw in the necessary amount of air.

"The result here accomplished would not be accomplished by an ordinary air-mixing burner, in which the air was mingled generally with the body of the gas, as, for instance, a burner of the type patented to Thomas Holliday on April 20, 1897, No. 581,117. In that type of burner there is an intermediate chamber provided for the special purpose of mingling the air and gas before they escape from the burner.

"In my burner an absolutely unobstructed passage is provided for the escape of the original jet of gas, formed by the constricted opening, C. By reason of this fact it is substantially necessary to have two jets, if a flame of considerable candle power is desired.

"The structure of my burner is such that if all of the burner were cut off in a horizontal plane immediately above the outlet, C, the general shape and condition of the flame would not be modified, but in this case an immediate combustion would occur at the outlet. Under the conditions of this burner the point where the gas reaches its kindling temperature is carried upward, but the general shape of the escaping gas body is not materially modified. Of course the shape of the body of escaping gas, though cylindrical as it issues from the round hole, increases somewhat in diameter, approximating in some degree to the form of an inverted cone. Though I use the word 'cylin-

der' in this specification, I do not necessarily limit the shape of the escaping gas to exactly a true cylinder, but intend to include any other form which would be substantially equivalent in its operation."

The drawings annexed are as follows:

The defendants insist that as the bill of complaint alleges an assignment to Iden, and then the grant of an exclusive license during the life of the patent to the other complainants, this is equivalent to showing absolute ownership in the complainants other than Iden, and that the complaint must be dismissed as to Iden or as to the licensees. The defendants deny infringement, and allege that claims 1 and 2 are invalid and void because their subject-matter was not described nor claimed in the application signed and sworn to by the patentee, and also set up the defense of anticipation.

The burners manufactured and sold by the defendants, and which

are alleged to infringe upon the patent in suit, are known to the trade as the "Gem," "Queen," and "Champion" burners, and are made in substantial accordance with, and are alleged to be covered by, the claims of letters patent No. 617,942, dated January 17, 1899, and No. 634,838, dated October 10, 1899, both issued to Henry E. Shaffer, and which are now owned by the defendant company, though there are some differences in structure, which will be pointed out.

The specifications and claims of patent No. 617,942 are as follows:

"Be it known that I, Henry E. Shaffer, of Rochester, in the county of Monroe and state of New York, have invented certain new and useful improvements in burners for acetylene gas; and I do hereby declare the following to be a full, clear, and exact description of the same, reference being had to the accompanying drawings, forming a part of this specification, and to the reference numerals marked thereon.

"My present invention has for its objects to provide an improved burner for gas rich in carbon, such as acetylene gas, whereby not only will the light be improved and more perfect combustion had, but the flame will be free from the fluctuations due to variations in pressure of the gas; and to these and other ends the invention consists in certain improvements hereinafter fully described, the novel features being pointed out in the claims at the end of this specification.

"In the drawings, Fig. 1 is a side elevation of a gas burner constructed in accordance with my invention; Fig. 2, a vertical sectional view of the same; Fig. 3, a similar view of a modification; Fig. 4, a horizontal sectional view of the burner shown in Fig. 3; Fig. 5, a cross-sectional view on the line, x x, of Fig. 2. Similar reference numerals indicate similar parts.

"In Figs. 1 and 2 I have shown the preferred form of burner, consisting generally of a body portion, 1, preferably of metal, having a gas passage, 2, a central chamber, 3, and also an upwardly extending external projection, 4, preferably formed with the burner body, and projecting between and preferably close to the under sides of the flames from two burner-tips, 5, arranged with their gas orifices at an angle to each other, and receiving gas from the central chamber, 3. The object of the projection, 4, is to provide a mass of material below the point of co-operation of two gas jets impinging at an angle, which will become heated by proximity to the flames, and will in turn react upon the gas and promote its combustion, and heat the air that reaches the flame from below. In order that as little of the heat of the projection, 4, as possible shall be transmitted to the burner body, I reduce the supporting portions thereof as much as possible by cutting away the metal beneath it, as at 6, leaving only the narrow supporting arms, 7, which are strong enough to hold the projection, but offer a very small heat-conducting surface.

"The burner-tips, 5, are each constructed of soapstone, lava, or similar refractory material, and are preferably provided with two passages, 8 and 9, the former constituting the entrance passage, being in communication with the interior of the chamber, 3, and the latter, being the discharge passage, extending at an angle to the former and communicating with it through the minute gas aperture, 10. The passage, 9, constitutes a chamber for thoroughly mixing the gas issuing from the aperture, 10, with air before burning it, and, in order to accomplish this in the best manner, I provide the lateral air inlets, 11, arranged at right angles to the passage, 9, and about half below and half above the bottom of the passage, 9, the minute aperture, 10, being of course at the lower side of the lateral air passages, which insures the air entering the passages striking the column of gas at right angles, and when it first issues from the aperture, 10. I prefer to form the passage, 9, by drilling in from the outer end of the tip. Then the minute aperture, 10, is drilled, and then the passages, 11, are formed by passing a larger drill through from side to side of the tip, the center of said drill being about on a level with the bottom of the passage, 9, as will be understood from an inspection of Figs. 2 and 5.

"Near the outer end of the passage, 9, are provided very small lateral passages, 12, serving to admit air to the column of mixed air and gas near the

124 F.—49

point of combustion, effectually surrounding it and preventing contact with the extreme end of the tip, thereby preventing undue heating of the latter and the formation of a deposit thereon. Tips thus constructed I find give very good results, and insure the consumption of all of the gas, without causing the deposits which sometimes impair the efficiency of burners of this class, and by the arrangement of the passages, 8 and 9, at an angle, as shown, the tips may be readily employed not only in the form of burner shown in Figs. 1 and 2 for producing a flat flame, but also to produce separate vertical jets, as shown in Figs. 3 and 4, as will be described.

"The burner shown in Figs. 1 and 2 not only is well adapted for use in connection with the particular form of tip shown, but the feature of having a central gas chamber, 3, and the gas passages to the tip, out of line with the inlet passages, is particularly advantageous, because the flame is relieved from fluctuations due to variations in the pressure of the gas, the gas contained in the chamber forming a cushion to some extent, and insuring a comparatively even supply to the flame, and the angular arrangement of the passages, 8 and 9, in the tip contributes also to this result.

"While it is desirable to have the burner-tips herein shown and described arranged at an angle to produce a flat flame, they are capable of use in a burner-body of the form of that shown in Figs. 3 and 4, in which the upper portion (indicated by 20) is provided with horizontal radial apertures adapted to receive the tips, the passages, 9, being vertically arranged to produce a series of vertical flames, and while I have shown four tips attached any number desired could be employed. In this construction also it will be noted that the interior of the body constitutes a chamber, and the passages in the tips are not in a direct line with the inlet passage, 21, so that the flickering of the flame due to variations in pressure is materially reduced.

"The tips could be molded or otherwise formed, if desirable, and the specific form changed, without departing from the spirit of my invention; but I prefer that the channels, 8 and 9, be arranged at an angle, as shown, as this feature prevents undue flickering by reason of the change in direction of the flow of gas, and also facilitates the application to the forms of burner-bodies shown herein.

"I claim as my invention:

"(1) In a burner for acetylene and similar gases, the combination with the burner-body having the tapering extension and the round gas apertures discharging gas in converging streams above the extension, and substantially parallel with the faces thereof, thereby causing the extension to be heated by the flames.

"(2) In a burner for acetylene and similar gases, the combination with the burner-body, having the tapering extension, of tips having the round gas-discharge apertures and the surrounding air-supply passages, said apertures discharging air and gas in converging streams above the extension, substantially parallel with the faces thereof, thereby causing the extension to be heated by the flames.

"(3) The combination with the burner-body and the burner-tips, discharging gas in converging streams above the body, of the extension formed on the body, and arranged between the tips, and having a narrow connection with the body to prevent conduction of heat to the latter.

"(4) A burner-tip having the discharge passage or channel open at one end to the air, a gas aperture smaller than the passage and arranged at and discharging axially into the bottom thereof, and separate air channels extending at right angles to the open passage, and operating to supply air to the gas as it first issues into the passage.

"(5) A burner-tip having the discharge passage or channel open at one end to the air, a gas aperture smaller than the passage and arranged at and discharging axially into the bottom thereof, and separate air channels extending into the passage at right angles thereto and intersecting it in the plane of the small gas aperture, whereby the air will be thoroughly mixed with the gas at the point of exit into the passage.

"(6) A tip for acetylene gas burners, composed of a single piece of refractory material having the inlet and discharge passages arranged at an angle with each other, and the small gas aperture between the end of the discharge

passage and the side of the other, and air passages leading into the discharge passage.

"(7) As an article of manufacture, a tip for acetylene gas burners composed of a single piece of refractory material having the entrance and discharge passages arranged at right angles to each other, said discharge passage having separate air passages leading into it from the sides.

"(8) A tip for acetylene and similar gas burners having the discharge passage for the gas and air, the small gas aperture leading into said passage, and the separate air passages extending from the outside of the tip into the lower end of the discharge passage, and directing the air upon the column of gas at right angles to its plane of movement, thereby causing a thorough mixture of air and gas.

"(9) A burner-tip for acetylene and similar gas burners, having the discharge passage, 9, the small aperture, 10, at the bottom thereof, the lateral air channels discharging air upon the gas at right angles to the plane of the latter and at the sides of the aperture, 10, and the small lateral air passages, 12, near the end of the passage, 9, substantially as described."

The specifications and claims of patent No. 634,838 are as follows:

"Be it known that I, Henry E. Shaffer, a citizen of the United States, residing at Rochester, New York, have invented an Improved Acetylene Gas Burner, of which the following is a specification, reference being had to the accompanying drawings.

"My invention relates to burners for acetylene gas having divergent arms provided with diverging gas passages and converging gas exits and suitable air passages to produce a flat flame, such as have heretofore been made entire of metal, and also with metal arms and separable refractory tips.

"My improved burner is fully described and illustrated in the following specification and the accompanying drawings, the novel features thereof being specified in the claims annexed to the said specification:

"In the accompanying drawings, representing my improved gas burner, Fig. 1 is a side elevation; Fig. 1a is an enlarged central vertical section of Fig. 1; Fig. 2 is a central vertical section; Fig. 3 is a partial side view as seen from the direction of the arrows in Figs. 1 and 2; Figs. 4 and 5 represent a modification, the latter figure being a partial section on the line, 5 5, Fig. 4.

"My improved burner has a body consisting of the hollow central stem, A, having the gas supply passage, C. B B' are two hollow divergent arms, having gas passages, D D', which are divergent, and communicate with the minute convergent gas exit orifices, F F'.

"A gas-supply tube is denoted by T.

"E E' denote air-supply passages, which, as shown in Figs. 1 and 1a, are formed by boring through the material between the gas exits and the outlet from the mixing chambers, N N'. In Figs. 2 and 5 the air passages, E and E', are formed by boring from the rear of the arms, B B', through the mixing chambers, and are contracted at H R and H' R', respectively.

"In a modification represented in Figs. 4 and 5, two or more openings, J J', J2, lead the air from the passage, E, to the passage, N, into which the gas is delivered from the orifice, F.

"The air-supply passages deliver air to air and gas mixing chambers, N N', adjacent the gas exits. The said chambers are partially bounded on their proximate sides by the faces, L L'. In use the burner produces a flat flame at O. To insure this form of flame, it is necessary that the jets of gas from the two exits accurately impinge as in other well-known burners having opposite gas exits adapted for the production of a single flat flame. Especial nicety and accuracy of construction are required in acetylene burners on account of the minute size of the gas exits and the consequent fineness of the gas jets.

"In burners of the same general form, having refractory tips, it has been found impracticable to cement the tips in the metal burner arms so as to insure a suitable alinement of the gas exits and jets. It is therefore the practice to light every such burner and adjust the tips after they have been cemented in the metal burner-arms by twisting or bending the arms by means

of a suitable tool, and thus experimentally secure an adjustment suitable for the production of the desired form of flame. The practice is general, and is not only troublesome, but inefficient, for the reason that the high heat to which the burners are subjected in use causes the twisted or bent metal to return toward its original position, whereby the gas exits are thrown out of proper relation, and the flame changed in form.

"My improvement provides, by making the burner body and arms of one piece of nonmetallic refractory material, that the gas exits can be properly formed and arranged to produce the desired form of flame with certainty and without testing and altering, as in the case of composite burners, and without danger of subsequent torsion by high heat. Such improved burners can also be made much cheaper than metal burners with refractory tips.

"It was suggested in patent No. 618,239, granted me January 24, 1899, that burners of the character therein set forth might be made entire of refractory material. The present improvement relates to a distinct class of burners, which are adapted for and heretofore have been provided with refractory tips inserted in divergent arms, and having gas exists directed toward each other to produce a flat flame, the object being to remedy the before mentioned defect in such burners.

"Having thus described my invention, what I claim is:

"(1) The herein described double-jet gas burner, made entire of a single piece of refractory material, with divergent arms having diverging gas passages and converging gas exits and suitable air passages, all as set forth, to insure and maintain the proper form of the flame.

"(2) The herein described double-jet gas burner, made entire of a single piece of refractory material, with divergent arms having divergent gas passages and converging gas exits and suitable air passages, all as set forth, to insure and maintain the proper form of the flame, said air passages leading to mixing chambers adjacent the gas-discharge openings.

"(3) The herein described double-jet gas burner, made entire of a single piece of refractory material, having divergent arms with divergent gas passages, convergent gas exits communicating therewith, air and gas mixing chambers in communication with the gas exits, and air passages leading into the mixing chambers between the gas exits and the outlets from said chambers."

The defendants claim that their burners are made in accordance with these Shaffer patents. Letters patent No. 617,942 are of later date than the patent in suit. The defendants' burners are not made in strict accordance with this patent, as they do not have four air passages, neither are the lower air passages found in the defendants' burners at a considerable distance from the air openings. The complainants contend that the patent in suit is for a pioneer invention; that it is of great value; that the entire calcium carbide and acetylene gas industry was at a standstill for the want of a proper burner; that the advantages of the Dolan burner were quickly recognized, and that the sales of these burners increased rapidly from year to year; that the defendants' burners are partially made in accordance with United States letters patent No. 617,942 to H. E. Shaffer; that this patent distinctly admits that the burners are provided with an air passage near the point of combustion for the purpose of effectually surrounding the gas, preventing contact with the extreme end of the tip, and preventing undue heating of the latter and the formation of deposit thereon.

The defendants contend that the complainants' title is defective; that the process claimed in the complainants' patent is the alleged function of the burner or for the use of the burner shown and described; that claims 1 and 2 of the complainants' patent are invalid and void because their subject-matter was not described nor claimed in the ap-

plication signed and sworn to by the patentee; that amendments were allowed beyond the scope of the original specification and claims, and that, therefore, the patent is void; that complainants' admission by stipulation that the burners of the Dolan patent in suit are inoperative when made of brass limits the alleged invention of the patent to material only; that defendants' burners nor their use in burning acetylene gas infringe the claims of the patent in suit; and that the claims of the patent in suit are not capable of a broad construction.

Claims 1 and 2 of the Dolan patent distinctly assert that the patent relates and is intended to cover the process of burning acetylene gas, which process consists in projecting a small cylinder of gas, and in surrounding this cylinder of gas with an envelop of air insufficient to cause combustion of all the gas, and in finally supplying such gas with an additional amount of oxygen by allowing the stream of gas to expand after leaving the burner tip and coming into contact with the air, and thereby burning such gas in the mode and manner described in the specifications, and the process of burning acetylene gas by projecting toward each other two cylinders of acetylene gas, and in surrounding such cylinders of gas with envelops of air insufficient to produce combustion of all such gas, and in finally causing these two cylinders of gas to impinge upon each other and produce a flat flame, as described. Claims 3 and 4 cover the combination in the acetylene burner of the block marked "A," having the opening marked "C," another opening marked "E," opening without obstruction to the atmosphere and certain air passages, and the combination in such a burner of two air-mixing burners mounted upon a suitable support and inclined toward each other, the said burners being each provided with an air-ejecting apparatus within the burner as described.

The specifications state that the invention covered by the patent relates both to a new and useful process for burning rich gases, particularly acetylene gas, and to a new and useful improvement in burners for carrying this process into effect. Claim 1 relates to the alleged process through a single burner tip, and claim 2 relates to the process carried into effect by the employment of two tips arranged at an angle.

In Cochrane v. Deener, 97 U. S. 780, 24 L. Ed. 139, the Supreme Court of the United States said:

"A process is a mode of treatment of certain materials to produce a given result. It is an act, or a series of acts, performed upon the subject-matter to be transformed and reduced to a different state or thing. If new and useful, it is just as patentable as is a piece of machinery. In the language of the patent law, it is an art. The machinery pointed out as suitable to perform the process may or may not be new or patentable, while the process itself may be altogether new, and produce an entirely new result. The process requires that certain things should be done with certain substances and in a certain order, but the tools to be used in doing this may be of secondary consequence."

It is contended that claims 1 and 2 are void as process patents; that it must, as to these claims, be deemed for the use of the burner, and hence not patentable.

An art or operation or process is an act or series of acts performed by some physical agent upon some physical object, and producing

on such object some change either of character or of condition. It is said to be so far abstract that it is capable of contemplation by the mind apart from any one of the specific instruments by which it is performed. It is so far concrete that it consists in the application of physical force through physical agents to physical objects, and can thus become apparent to the senses only in connection with some tangible instrument and object. 1 Rob. on Patents, § 159.

Here we have a process for burning rich gases, particularly acetylene gas. It is urged that, as nothing is said in complainants' patent that the object or purpose is to produce light or an illumination, we must give a narrow construction, and that the light-producing effect of the process, if any, is not covered by the patent. This court is of the opinion that this construction is decidedly too narrow.

The physical object acted upon is acetylene gas, and air operating through the burner described is the physical agent, and the change produced on the object is that it is burned up, transformed into light, or so transformed as to produce light, and so serve a most useful purpose. Were it not for this particular process, deposits of carbon, etc., would be formed, the flame distorted, but little light emitted, etc. Certainly the character and condition of the acetylene gas, the object, is changed. In order to burn acetylene gas with profit and for use, certain instrumentalities for confining it must be used, and the quantity being burned at a given time must be limited and controlled. This is done by physical agencies—a receptacle for the gas, and a conductor or conductors therefor to the point of combustion. It is not desirable to have the combustion "lying around loose." So we have a burner or tips, etc., and within and just outside the process is carried on as the process of dyeing textile fabrics is carried on in a tub or other receptacle. The particular mode of treatment here specified is to separate the escaping column of gas from the burner surface, and prevent the formation and deposit at this point of benzol, carbon, etc., one or more of them, and thus choking the burner, and preventing the burning of the gas and the emission of light. This is not only a process, but a useful and a new process, and therefore a patentable process. Claims 1 and 2 are valid.

This process does not consist in the operation of a machine or of the burner, and therefore is not the function of the burner. The defendant says in his brief that the gas would burn if ignited without anything being done to it, and that for aught that appears the flame produced by the gas would be precisely the same under any and all circumstances, and the burning of the gas is not in any way dependent upon the particular structure of the burner having air passages discharging air upon or surrounding the column of gas before ignition.

With this contention this court does not agree. Water heated in a pan would give off steam, but will it be contended that a process for confining and applying steam so as to make it useful and a power in the hands of man is not patentable? The doctrine is firmly established that a new mode of operation or a manner of making is equally patentable with an operating instrument or with an object made. An artificial operation performed by physical agents, and producing physical effects, when within the domain of the industrial arts, is a true

invention, and can be patented as such without reference to the specific instruments engaged or the specific objects in which its effects may be produced. A machine is a thing, but a process is an act or mode of acting. The one is visible to the eye—an object of perpetual observation. The other is a conception of the mind, seen only by its effects when being executed or performed. Either may be the means of producing useful results. The mixing of certain substances together or the heating of a certain substance to a certain temperature is a process. If the mode of doing it, or the apparatus in or by which it may be done, is sufficiently obvious to suggest itself to a person skilled in the particular art, it is enough in the patent to point out the process to be performed, without giving supererogatory directions as to the apparatus or method to be employed. If the mode of applying the process is not obvious, then a description of a particular mode by which it may be applied is sufficient. There is then a description of the process and of one practical mode in which it may be applied. Perhaps the process is susceptible of being applied in many modes and by the use of many forms of apparatus. The inventor is not bound to describe them all in order to secure to himself the exclusive right to the process, if he is really its inventor or discoverer. But he must describe some particular mode or some apparatus by which the process can be applied with at least some beneficial result, in order to show that it is capable of being exhibited and performed in actual experience. 19 O. G. 859, 863.

The application of a known force to known objects in a new manner is a new art. Foote v. Silsby, 1 Blatchf. 445, Fed. Cas. No. 4,916; Higgs v. Goodwin, E. B. & E. 529. An art may be either a force applied, a mode of application, or the specific treatment of a specific object, and the art must produce physical effects; but it is, of course, distinct from the instrument which it employs, but any available instrument may be employed.

The defendant in his brief says that the invention, if any, is in the burner, which, by reason of its structure, prevents the carbon from depositing upon it, and the alleged process is merely the function or mode of operation of the particular burner, and is therefore not patentable. This claim is a mistake. The burner is constructed in the manner described for the purpose of allowing the process to be carried on, and the process consists in the gas passing through the conductor, into which conductor or conductors comes the air through the apertures mentioned, and then both the gas and the air, the air surrounding the gas, and it may be mixing with it somewhat, pass out, and the gas is ignited and combustion takes place, and we have a continued bright illuminating flame. It is not the burner, which, by reason of its peculiar construction, prevents the carbon from depositing upon it, and which deposit prevents the burning of the gas and the illumination desired, but it is the process mentioned which prevents a deposit of the carbon. The defendant says that the air does not do anything to the gas. This may and may not be true. It passes into the same conductor with the gas, and is supposed to surround the column of gas, but, while it surrounds it, it may mix therewith to some extent. Nor is it necessary to make this process patentable that the patent

should describe just how much air is to be allowed to have access to the gas to envelop it, or how much air would be insufficient to cause combustion of all the gas, etc. It is not sufficient, as has been discovered by the inventor of this process, that the gas come in contact with the air after leaving the conductor at the point of ignition. The inventor of this process has discovered that it is necessary to have the column of gas surrounded by air previous to leaving the conductor. The inventor of this process described in the patent in suit has discovered something new and has patented it. All previous inventors failed to discover this process. Although they tried long and diligently, they failed to accomplish the desired result, and the burning of acetylene gas was a failure.

It has been claimed that this same envelopment of an acetylene stream of gas by air takes place in the Billweller burner, but it is shown by the proofs that this is not true. In the Dolan patent the burners have an air passage near the point of combustion for the purpose of effectually surrounding the ascending column of gas, preventing its contact with the extreme end of the tip, and preventing undue heating thereof and forming a deposit thereon. The defendants admit the theory set forth in the patent in suit just mentioned, but allege that this is not new, and allege that many prior patents produced in evidence would have produced the same results. They also contend that as the Shaffer patent, No. 617,942, has an air duct at quite a distance below the air duct near the extreme end of the tip, the envelop of air in the defendants' burners surrounds a mixed column of gas and air instead of a volume of gas alone, as set forth in the Dolan patent. This may or may not be material, but the lower air duct of the defendants' burner is not made in accordance with the Shaffer patent. The lower air duct is a trifle lower than the air passage, and permits the air to curl around the mixed jet of air and gas, and so states defendants' witness. It is contended that the claims of the Dolan patent are limited to inclined air passages. This court is of the opinion that the claims are not so limited. Whether inclined or not would seem to be immaterial. The fact that one mode of making the air passages is indicated in the drawings or in the specifications (an immaterial matter) does not so limit the Dolan patent that another person may use the same process and the same invention substantially as described in claims 3 and 4, and by merely substituting air passages at right angles with the column of ascending gas escape the charge of infringement or claim a new or different invention.

The Bullier patent and the Pellissier book, edited by Bullier, distinctly claim a mixing of air and gas as their process. Experiments and trials and prior use demonstrate this to be a failure. The deposits occur, and there is no flame with illuminating power; in fact, the gas does not burn except a short time. On the other hand, it is shown that the Dolan process, etc., is a success, and will burn months without clogging. The Dolan patent accomplishes the results desired. The complainants and the patent itself claim that this result is accomplished by surrounding with air the column of gas in the manner and substantially at the points indicated, and by means of the enlarged chamber below the point where the gas is projected into the open air, and it will

be presumed (and there is evidence that such is the fact) that this is the result of the process described by complainants' patent, in the absence of evidence proving the contrary, inasmuch as the mixing theory is a failure and always has been.   When a patented process or machine proves a failure, is inoperative, and another follows, and is a success in its operation, the latter is a new invention and patentable, even though we have the same machinery or parts of machinery, but they are combined or put together in a new way; and this is true even if the latter combination closely follows and resembles the first, provided there be a difference.   In such case it is evident that the later patentee has succeeded where the other failed; that he has discovered or invented the desired thing to accomplish a new and a useful result; that his change, however unimportant it may seem to the observer, is the key to the whole situation.   In such case the defense of anticipation, of prior use, or prior invention is not made out.

This court has diligently searched for (in the records of this case and among the exhibits), but has been unable to find, in the prior art, anything showing a jet of gas surrounded by an envelope of air at the discharge orifice for the purpose of preventing combustion at that point, or which does that, or showing a gas tip made from lava or other refractory material, with a minute gas orifice at the longitudinal center with air passages above.   With these among other differences, and failure attending all prior inventions and processes, and success attending the Dolan patent, the conclusion is inevitable that the Dolan patent is valid, and that the defense of anticipation, etc., is not sustained.

This court is also of the opinion that infringement by the defendants is clearly made out.

The defendants' burners, known as the Queen, Gem, and Champion, clearly operate the patented process.

The defendants use and appropriate, substantially, the Dolan patent. Why?   Evidently because necessary to successfully burn acetylene gas.   The Dolan patent says the tip is preferably made of lava or other similar material adapted to the purpose.   The defendants cannot escape the charge of infringement, or make out a defense of prior use, etc., by showing that a tip made of tissue paper or cork or putty will not work or accomplish the desired result.   Neither is it a defense, in any aspect of the case or on any point in issue, to show that a tip made of brass is substantially inoperative.   The case came on for argument with the proofs closed with an admission in open court as to the points in dispute, and no claim was made that title in the complainants as alleged was in issue or would be disputed.   That, in effect, was admitted.   It was sought to open the case for further proof, whereupon a certain stipulation on other points was entered into, and no further evidence was taken, and a day for final hearing on the issues then presented was fixed.

This court holds that the question of complainants' title as alleged is admitted, and that it was admitted in open court that all the complainants are proper parties as such, and interested in the determination of the questions involved.   This court holds that it is too late to raise that question.   All the other questions raised and discussed have

been considered, but it is not necessary to discuss them here in detail. The conclusion is that the Dolan patent, No. 589,342, dated August 31, 1897, is valid, and that claims 1, 2, 3, and 4 have been infringed by defendants as claimed, and that complainants are entitled to an accounting and to the injunction prayed for. A decree will be granted accordingly.