DE LONG HOOK & EYE CO. v. FRANCIS HOOK & EYE & FASTENER CO.

(Circuit Court, W. D. New York.   October 5, 1906.)

No. 202.

PATENTS—INFRINGEMENT—HOOK AND EYE PACKAGE.

> The Richardson patent, No. 676,824, for a hook and eye package, in view of the limitation placed thereon by the Patent Office and acquiesced in by the patentee, is of narrow scope, and restricted to the precise method shown of securing to a card carrier, in combination with a row of hooks and eyes secured to said card by two rows of thread stitching, a series of invisible eyes by one of said rows of thread stitching; the operation of securing the same being one with that of securing the hooks and loop eyes.   As so construed, *held* not infringed.[1]

In Equity.   On final hearing.

William C. Strawbridge, for complainant.

Macomber & Ellis, for defendant.

HAZEL, District Judge.   The bill charges infringement of letters patent No. 676,824, dated June 18, 1901, issued to Thomas De Q. Richardson, for hook and eye package, which patent is now owned by complainant.   The patent relates to mounting invisible eyes on a carrier card associated with hooks and what are known as loop eyes.   The specification and claims describe two rows of hooks and eyes thread-stitched to a card carrier and so-called invisible eyes also sewed or stitched thereto; the latter being secured to the card by one of the rows of stitching by which the hooks and loop eyes are secured.   It is substantially stated in the specification that the manner of attaching the hooks and eyes and invisible eyes to the carrier is accomplished by "one and the same sewing operation."   The stitching operation by which the hooks and loop eyes are secured to the card carrier is also apparently effective to secure thereto the invisible eyes.   The principal object of the patentee was to supply to the trade a card bearing not only the hooks and loop eyes, but in addition thereto the invisible eyes, without enlargement of the card or the necessity of material alteration in the machines used in mounting the hooks and loop eyes.   The patentee says:

"I prefer to secure the hooks and eyes by thread to the card by passing thread through the card and through the thread-engaging bends of the hooks and eyes.   It is manifest, however, that the engagement of the thread with the hooks or eyes by passing directly through the thread-engaging bends of the same is not essential."

It is further stated in the specification that, as a result of the specific arrangement of mounting the articles upon the card—

"The operation of securing the invisible eyes upon the face of the card is one with the operation of securing the ordinary hooks and loop eyes upon the card, whereby a minimum of time and labor in the formation of the package is secured."

And also:

"Any preferred and suitable form of stitches may be employed to secure the thread-engaging bends of the sets of hooks and loop eyes and the thread-

---

[1] See note at end of case.

engaging bends of the invisible eyes to the card, and the operation may, of course, be performed by hand or by machine "

It will be noted, despite the declaration in the specification, that threading the bends of the hooks and eyes was not essential; that the principal achievement was the specific arrangement by which one and the same stitching operation secured the hooks and loop eyes and the invisible eyes upon a card. No other or different attaching means are suggested in the patent. . Claim 1, which is involved, reads as follows:

"(1) A commercial package of hooks and eyes comprising a carrier card and a row of hooks and loop eyes, two rows of thread stitching which secures said hooks and eyes to the card, and a series of invisible eyes secured to the card by one of said rows of thread stitching, substantially as set forth."

The defenses are want of novelty and noninfringement. There is considerable question as to the validity of the patent, but whatever doubt thereof existed in the mind of the commissioner of patents has been resolved in favor of the patentee. It is not thought necessary to disturb this conclusion, as this court likewise considers the novelty of the patent in grave doubt. Notwithstanding the broad language of the specification, the Richardson patent is exceedingly limited and concededly belongs to a narrow art. The claims contained in the original application for a patent covered broadly the method of stitching invisible eyes upon the card in connection with two rows of hooks and loop eyes. The Patent Office rejected the broad claims, on the ground that, in view of the prior art, there was no novelty in the claimed invention, citing, as anticipatory, the patent to Kirkham, No. 7,526, of July 30, 1850. Upon appeal the patent in suit was granted; claim 1 being limited to a "series of invisible eyes secured to the card by one of the rows of thread stitching, substantially as set forth." The patentee acquiesced in such limitation and amended the claim to conform thereto. Therefore the scope of claim 1 cannot be enlarged, or even given a construction of such liberality as to include the defendant's method of attachment, as shown by the proofs. The file wrapper in evidence shows that the patent would not have been granted had the patentee persisted on claims broader than those finally accepted by him. The specification nowhere suggests the defendant's method of attachment, and in these circumstances the rule announced in Haines v. McLaughlin, 135 U. S. 584, 10 Sup. Ct. 876, 34 L. Ed. 290, is thought to apply. It is there stated:

"A claim limited by the Patent Office and acquiesced in by the patentee should not be enlarged by construction beyond the fair interpretation of its terms."

I am of the opinion that the claim must be limited to the precise method of securing to a card carrier, in combination with a row of hooks and eyes, secured to said card by two rows of thread stitching; a series of invisible eyes by one of said rows of thread stitching; the operation of securing the same being one with that of securing the hooks and loop eyes.

Does the defendant infringe the patent in suit? On first inspection defendant's arrangement of the invisible eyes upon its card carrier impresses one as being a clever imitation of complainant's method of at-

tachment. The proofs, however, indicate a different process of manufacture. By complainant's process the hooks and eyes, together with the invisible eyes, are preferably stitched upon the card by a common thread which passes through one of the engaging bends of the invisible eye and the engaging bend of the adjacent loop eye. In defendant's operation the hooks and loop eyes are first stitched upon the card in the manner shown in the patent to Kirkham, and afterwards, and by a second operation, the invisible eyes are attached by forcing a bend thereof under the thread loops and between the bends of the loop eyes. In other words, in the defendant's arrangement, the invisible eyes are not stitched underneath the thread stitching by which the hooks and eyes upon complainant's cards are secured, but they are inserted between the loop of thread which serves to retain in place the row of loop eyes.

Complainant contends that, even if the claim is restricted in its scope to the specific method of attachment described in the specification, the defendant nevertheless infringes, inasmuch as it secures the invisible eyes upon the card by a process of stitching or by inserting or pressing them under the stitching between the arms of the loop eyes at the same time that the hooks and loop eyes are stitched to the card. This contention, however, is not sustained by the evidence. If I were convinced that defendant secured or attached the invisible eyes to the cards by the identical operation that secured the loop eyes thereto, I would not hesitate to hold such method an evasion of the complainant's specific method of mounting its invisible eyes. Upon this point, the witness Francis, for the complainant, substantially testifies that the invisible eyes are "pushed under the threads where they are held by the two arms of the loop eye in an upright position." The witness James, an employé of defendant, when asked regarding its manner of attaching the invisible eyes upon the cards, testified that the defendant had been "sewing them that way for at least two or three years, putting them on, attaching them that way." No further evidence was given on the subject, and none is found in the record except the Francis patent, No. 716,698, dated December 3, 1902. There is some indefiniteness regarding defendant's method of attachment of the invisible eyes, but it is not established by the proofs that they were sewed or secured to the card carrier by the same operation which secured the hooks and loop eyes thereto. On the contrary, the evidence indicates that the invisible eyes were not attached until after the hooks and loop eyes were stitched to the card.

The defendant contends that the cards manufactured by it are covered by the patent to Francis, which shows that the invisible eyes are forced between the two loops of the loop eyes and under the loop of stitching holding said eyes, forming a sort of spring-lock arrangement. Whether this is the method practiced by the defendant is not absolutely clear. Certainly the practicability of a so-called spring-lock engagement of the loop eye would seem to be involved in doubt, but this suggestion, in view of the testimony showing that defendant pushes or presses the invisible eye under the stitching between the arms of the loop eyes after the hooks and loop eyes have been stitched to the

card, is not material. The burden rests upon the complainant to establish infringement of its specific method of carding the additional eyes. That there has been such infringement by a process of stitching, or that the hooks and eyes, together with the additional eyes, were attached to the card by one and the same operation, is not shown, and therefore, in my judgment, the principle of the patent in suit has not been appropriated by the defendant.

The bill is dismissed,· with costs.

## NOTE.

### Limitation of Claims.

[a] (U. S. 1904) The claim of the Cramer patent, No. 271,426, for the use in combination of a vertical double brace and a sewing machine treadle provided with trunnions fitted to oscillate in such brace on bearings therein, "substantially as specified," must be deemed to cover only elements in combination having substantially the form and constructed substantially as described in the final specifications and shown in the accompanying drawing, where the Patent Office, after twice refusing to allow the patent because of certain prior patents, evidently was led to take favorable action because of the peculiar form of the described bearing when situated in a vertical cross brace, such as was shown in the drawing, with the described accessories. Judgment (1901) 109 Fed. 652, 48 C. C. A. 588, reversed.—Singer Mfg. Co. v. Cramer, 24 Sup. Ct. 291, 192 U. S. 265, 48 L. Ed. 437.

[b] (U. S. 1904) The devising of means for utilizing a vertical double or cross brace cast in one piece as a support for a sewing machine treadle cannot be deemed to have involved such an exercise of the inventive faculty as to make the Cramer patent, No. 271,426, for a new and improved sewing machine treadle a primary one, and entitle the patentee to a liberal construction of his claim, where, at the time of his alleged invention, a vertical cross brace and a lower cross brace or tie rod were common adjuncts of sewing machines, and it was customary to support the lower cross rod or brace in the web of the legs of sewing machines, and to utilize the legs as bearings, and the employment of solid castings as bearings or supports for oscillating shafts where a fixed alignment was essential was a well-known method of machine construction. Judgment (1901) 109 Fed. 652, 48 C. C. A. 588, reversed.—Singer Mfg. Co. v. Cramer, 24 Sup. Ct. 291, 192 U. S. 265, 48 L. Ed. 437.

[c] (U. S. 1903) Features of construction which the specifications of a patent recommend or describe as preferable do not thereby become essential parts of the patent or limitations of the claims.—Smeeth v. Perkins & Co., 125 Fed. 285, 60 C. C. A. 199.

[d] (U. S. 1903) The rule applied that the fact that the machine of a patent is capable of a method of use not referred to nor indicated in the patent cannot be availed of to affect the construction of the claims. Decree (C. C.) 122 Fed. 470, affirmed.—United States Peg-Wood, Shank & Leather Board Co. v. B. F. Sturtevant Co., 125 Fed. 378, 60 C. C. A. 244.

[e] (U. S. 1903) In the construction of a generic process patent, every phenomenon observed during operation and every minute detail described in illustrating the process in the specification is not to be read into the claims as a limitation, to avoid a charge of infringement. Decree (C. C. 1901) 111 F. 742, modified.—Electric Smelting & Aluminum Co. v. Pittsburg Reduction Co., 125 Fed. 926, 60 C. C. A. 636.

[f] (U. S. 1903) The claims of the Bradley patent, No. 468,148, for a process for the reduction of aluminium, in which the same electric current is used to fuse and electrolyze the ore, are not limited to a process in which a current of twice the ordinary strength is used, by the statement in the specification, in describing a particular case illustrating the process, that a current about twice as strong was employed as was used when the fusion was produced by external heat; nor is infringement avoided where the increased effectiveness of the current is obtained by reducing the resistance, instead of increasing the

strength of the current. Decree (C. C. 1901) 111 F. 742, modified.—Electric Smelting & Aluminum Co. v. Pittsburg Reduction Co., 125 Fed. 926, 60 C. C. A. 636.

[g] (U. S. 1903) The words "to operate substantially as described," at the end of a claim, do not import into the claim elements described in the specification, but not mentioned in the claim, for the purpose of either extending or limiting it.—General Electric Co. v. International Specialty Co. (C. C. A.) 126 Fed. 755.

[gg] (U. S. 1903) The claims of a patent are not narrowed by statements made on an argument by counsel before the Patent Office to obtain a reconsideration after the application has been rejected, where no changes are made in the claims. Decree (C. C. 1901) 110 Fed. 217, reversed.—Boyer v. Keller Tool Co. (C. C. A.) 127 Fed. 130.

[h] (U. S. 1903) The range of equivalents covered by a patent for machinery corresponds with the character of the invention, and includes all forms which embody the substance of the invention, and by like mechanical co-operation effects substantially the same result. Decree, Dowagiac Mfg. Co. v. Brennan (C. C. 1902) 118 Fed. 143, reversed.—Dowagiac Mfg. Co. v. Brennan & Co. (C. C. A.) 127 Fed. 143.

[hh] (U. S. 1904) The Hale patent, No. 634,556, having for its essential and patentable feature a sterilizing chamber, consisting of the upper part of the boiler, above the water, into which air is admitted and carried across the surface of the water, through the steam, to a passage opposite the inlet, through which it passes, mixed with the steam, to the condenser, and such feature of construction having been specially described in the amended specification and insisted on as giving novelty to the combination, the other elements of which were old, cannot be disregarded, but imposes a limitation on the claims of the patent, which are not infringed by a still which is without such chamber.—Hale v. World Mfg. Co., 127 Fed. 964, 62 C. C. A. 596.

[i] (U. S. 1904) An element of a combination, although not definitely described in the claims, except by reference to the specification by the words "substantially as described" at the end of each claim, may be read into the claims, where it is fully described in the specification, and is essential to the operation of the machine.—Sanders v. Hancock, 128 Fed. 424, 63 C. C. A. 166.

[ii] (U. S. 1904) If the construction of a patentee effects the desired results, and they are beneficial, he does not lose the benefit of his invention because he may not have correctly understood the principles of its operation.—Cleveland Foundry Co. v. Detroit Vapor Stove Co. (C. C. A.) 131 Fed. 853.

[j] (U. S. 1904) An inventor may so amend his specification as to include therein all the advantages within the scope of his invention, where his amendment is filed before other inventors have entered the field, whose rights might be prejudiced, and the original drawings and specification sufficiently show and suggest the claims finally made. Decree (C. C. 1903) 124 Fed. 764, affirmed.—Kirchberger v. American Acetylene Burner Co. (C. C. A.) 128 Fed. 599, rehearing denied 132 Fed. 911.

[jj] (U. S. 1904) Where the original specification for a patent sufficiently disclosed the nature of the invention claimed, and sufficiently suggested the process involved therein, it is permissible to amend so as to include claims covering the process, as well as the mechanical structure. Decree (C. C. 1903) 124 Fed. 764, affirmed.—Kirchberger v. American Acetylene Burner Co. (C. C. A.) 128 Fed. 599, rehearing denied 132 Fed. 911.

[k] (U. S. 1904) The Adams patent, No. 24,915, for "a tube or cylinder cast out of copper, and free from blowholes and other similar defects, when produced as herein stated," covered a product only, and not the process, and was void for anticipation, it being shown that other processes previously in use also produced sound copper tubes, although not so large a percentage as that described in the patent. Decree (C. C. 1903) 124 Fed. 782, affirmed.—American Tube Works v. Bridgewater Iron Co., 132 Fed. 16, 65 C. C. A. 636.

[kk] (U. S. 1904) The word "rotary," used in a claim of a patent to describe an element of a combination, does not necessarily imply a continuous rotation of the part, so as to make it necessary to limit the claim by reading into it as an additional element mechanism for such rotation, but is properly descriptive if the part is capable of being rotated by hand or otherwise.—

King Philip Mills v. Kip-Armstrong Co. (C. C. A.) 132 Fed. 975, reversing Kip-Armstrong Co. v. King Philip Mills (C. C.) 130 Fed. 28.

[l] (U. S. 1904) If validity is given to a patent only by an improvement of a narrow character, just sufficient to cross the line which divides mechanical improvement from patentable invention, the inventor will be protected only as to such improvement as is specifically described, and is but little aided by the doctrine of "equivalents," which term has a variable meaning and is measured by the character of the invention.—Rich v. Baldwin, Tuthill & Bolton, 133 Fed. 920, 66 C. C. A. 464.

[ll] (U. S. 1904) While a doubtful or ambiguous description in the specification of a patent may be aided and made plain by the drawings, they cannot supply the entire absence of any written description of a feature of the invention. Decree (C. C.) 128 Fed. 58, reversed.—Windle v. Parks & Woolson Mach. Co., 134 Fed. 381, 67 C. C. A. 363.

[m] (U. S. 1905) The specification of a patent must be construed for the purpose of ascertaining the intent of the parties when the words "substantially as specified" are found in the claim, for the claim is founded on and explained by the specification, whether these words appear in it or not, and refer to the elements and operation set forth in the specification.—O. H. Jewell Filter Co. v. Jackson (C. C. A.) 140 Fed. 340.